[759 NYS2d 483]

In the Matter of RICHARD L. WERTIS (Admitted as RICHARD LAWRENCE WERTIS), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 5, 2003

#### APPEARANCES OF COUNSEL

*Vitaly Lipkanksy* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Susan Brotman (Benjamin, Brotman & Maltz, LLP)*, for respondent.

#### OPINION OF THE COURT

Per Curiam.

Respondent Richard L. Wertis was admitted to the practice

of law in the State of New York by the Second Judicial Department on March 28, 1979, under the name Richard Lawrence Wertis. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within this Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) immediately suspending respondent from the practice of law until further order of the Court. The motion is based upon respondent's substantial admissions under oath that he has committed acts of professional misconduct, and upon other uncontested evidence of professional misconduct posing an immediate threat to the public interest.

On or about May 9, 2002, the Committee received a complaint against respondent from one of his former clients. The former client is the father of an infant who was abducted from Harlem Hospital in 1987, and has never been found. At the time of the abduction, the infant was 2½ weeks old. Respondent had represented the infant's parents in a lawsuit against the New York City Health and Hospitals Corporation and certain other defendants, which was settled for $750,000 in 1992. Respondent received a fee of one third of the settlement amount, totaling $262,070.15. In 1993, a trust was created for the infant's benefit in the event she should be found, to which the parents jointly contributed $162,643.28 from their respective settlement funds. Respondent was named as trustee by the trust agreement.

According to the complaint, respondent was required to provide annual account statements and tax documents for the trust, but never did so. Lisa Newfield, Esq., an attorney whom the father retained in 2001, performed an audit and found that respondent had made three unauthorized withdrawals from the trust on January 12, 1996, March 15, 1996, and September 29, 1997, for a total of $7,281.85. The father told the Committee that he asked respondent to repay the money but respondent said he did not have sufficient funds to do so. Respondent denies this allegation.

In his answer to the complaint, submitted in August 2002, respondent essentially confirmed the alleged facts but denied that he was required to provide tax returns to the father, and asserted that he had kept the father informed as to the status of the trust. According to respondent, upon the completion of her audit of the trust, Newfield requested that respondent repay the three withdrawals with interest, that he resign as

trustee, and that he sign a settlement agreement. Respondent resigned as trustee effective May 16, 2002, repaid the aforementioned unauthorized withdrawals on May 22, 2002, and signed a settlement agreement with the parents, which, inter alia, released him from any further civil liability to them.

By letter dated August 22, 2002, the Committee asked respondent for more information, including the reason for each deposit to, and withdrawal from, the trust, and whether respondent had authority under the trust agreement to make such withdrawals. By a supplemental answer dated September 9, 2002, respondent admitted that he had no authority, either under the trust agreement or from the parents, to make a withdrawal of $1,781.85 from the trust on January 12, 1996, which withdrawal respondent made to pay a personal expense, namely, a payment on the mortgage on his family's home. Regarding the March 15, 1996 withdrawal of $500, respondent explained that such withdrawal was an administrative expense permitted under the trust agreement, which he caused the trust to incur for perceived tax reasons. Although he repaid this amount as part of his settlement with the parents, respondent still contends that it was a proper withdrawal. Respondent admitted further that the withdrawal of $5,000 on September 29, 1997, like the January 1996 withdrawal, was made to make a payment on his home mortgage and was unauthorized. On July 6, 1999, respondent deposited $1,600 of his own funds into the trust account to offset part of his unauthorized withdrawals.

In his deposition, respondent admitted that he made the January 1996 and September 1997 withdrawals, that such withdrawals were for his personal use and were unauthorized, that he repaid these funds after Newfield's audit, and that he intentionally lied to Newfield in order to conceal his misconduct. Specifically, respondent told Newfield that his deposit of $1,600 into the trust account had been a mistake.

The Committee asserts that respondent's admissions under oath and the uncontested evidence establish that: (1) while acting as a trustee, he intentionally converted funds from the trust account to his personal use, in violation of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (4) (22 NYCRR 1200.46, 1200.3); and (2) he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (a) (4), by deceiving Newfield in order to conceal his misconduct. The Committee notes further that respondent repaid the funds in full only after his conversions

were discovered five years later. Based on these violations, the Committee seeks respondent's immediate suspension from the practice of law pending resolution of disciplinary proceedings.

In opposition to the motion, respondent's counsel argues that suspension is not warranted because respondent's misconduct does not present an immediate threat to the public interest. Counsel points out that the nature of respondent's conduct was isolated; that he made partial restitution ($1,600) of improperly withdrawn funds prior to discovery; that he has cooperated with the Committee and made open admissions regarding his misconduct; that he has a reputation for honesty and integrity; that he is remorseful; and that he has no disciplinary history. In sum, counsel contends, the standard for immediate suspension, that is, the existence of an immediate threat of harm to the public, has not been met. In addition, counsel points out that, prior to the client's discovery of the wrongdoing, respondent repaid $1,600 to the trust in 1999, and forbore collecting trustee commissions for his services in 1998 and 2000.

Respondent's opposition to the motion includes submissions from three attorneys who attest, based on their professional experience with respondent, that his misconduct was an aberration. The attorneys thoughtfully describe respondent's reputation and character, and state their willingness to continue a professional association with respondent.

Respondent has also submitted his own affidavit imploring this Court not to suspend him. Respondent candidly acknowledges his mistakes, expresses contrition, and notes that he has made restitution. Respondent also explains that he was driven to make the January 1996 and September 1997 withdrawals by extreme financial pressures that arose from difficulties in collecting earned fees. Respondent concedes, however, that such circumstances provide no excuse for his actions.

We conclude that the Committee has demonstrated, through uncontested documentary evidence and respondent's own substantial admissions under oath, that respondent has committed professional misconduct posing an immediate threat to the public interest, and that an interim suspension is therefore warranted pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii). Respondent admittedly misappropriated trust funds for his personal use on more than one occasion, and initially lied to conceal such misconduct. While respondent did not convert a large amount of money, and his personal situation evokes sympathy, his misappropriation of client funds constitutes serious misconduct that demands an immediate response in

defense of the public interest (*see Matter of Goodman*, 229 AD2d 151 [1997]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, effective immediately, until such time as disciplinary proceedings have been concluded and until further order of this Court.

BUCKLEY, P.J., MAZZARELLI, ANDRIAS, SAXE and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective immediately, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.