[762 NYS2d 75]

In the Matter of KENNETH J. BIRNBAUM (Admitted as KENNETH JEROME BIRNBAUM), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 24, 2003

## APPEARANCES OF COUNSEL

*Vitaly Lipkansky* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Michael A. Gentile* of counsel (*Benjamin Brotman & Maltz, LLP*), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Kenneth J. Birnbaum was admitted to the

practice of law in the State of New York by the Second Judicial Department on February 26, 1973, and at all times pertinent to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.

On February 8, 2002, the Departmental Disciplinary Committee (the DDC) served respondent with a notice and statement of charges which alleged that he had violated Code of Professional Responsibility DR 1-102 (a) (4) and DR 9-102 (a) (22 NYCRR 1200.3, 1200.46), by converting and misappropriating client funds. Respondent answered the charges admitting the factual allegations but denying liability. By a prehearing stipulation dated April 25, 2002, respondent fully admitted his liability to the charges.

After the hearing, the Referee sustained both counts of the DDC's charges and recommended that respondent be suspended from the practice of law for two years.

The Hearing Panel, after hearing argument on August 12, 2002, unanimously confirmed the Referee's liability findings but modified as to sanction. Two of the three Panel members recommended respondent's disbarment because the mitigation presented was "not sufficiently unusual." The dissenting Panel member recommended a suspension for four years because she did not find that the facts and circumstances of respondent's misconduct justified disbarment.

The DDC now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) confirming the Hearing Panel's majority determination, which partially confirmed the Referee's report, and disbarring respondent from the practice of law. Respondent cross-moves to disaffirm the Panel's determination insofar as it modified the Referee's recommendation of a two-year suspension by recommending disbarment instead. Respondent seeks suspension as the appropriate sanction.

The Referee found that respondent admitted that between October 1, 1999 and January 1, 2000, on 17 occasions involving 16 different client matters, he withdrew from his IOLA client account funds approximately equal to his anticipated legal fee in each of the 16 matters and he did so prior to receiving and depositing into the account the settlement checks in question in order to cover his fees. The total of the 17 unauthorized withdrawals was approximately $50,000 and was used by respondent to pay personal and business expenses. Respondent admitted further that by making these withdrawals he misappropriated the funds of other clients whose funds were in the

IOLA account at the time of the withdrawals and whose funds he was obligated to maintain intact in the account, without permission from those other clients. Respondent admitted that he knew at the time that he made the withdrawals that he did not have the authority to withdraw and/or use the client funds and he was aware that his conduct was wrong. Respondent replaced the misappropriated funds with his share of settlement funds which he received in the 16 unrelated matters discussed above. Hence, it was found that respondent's conduct constituted intentional conversion of client funds in violation of DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit or misrepresentation) and misappropriation of client funds in violation of DR 9-102 (a) (failure to preserve the identity of client funds).

During the sanction phase of the hearing, respondent testified that he converted client funds because he was under severe financial pressure in his personal life. The Referee noted that between December 10, 1999 and January 6, 2000, the period immediately following respondent's last conversion, his law practice generated $50,000 in fees and that during the period from October 19, 1999 and January 6, 2000, he generated $100,000 in fees. However, respondent insisted that he could not have waited to legitimately collect sufficient funds.

When respondent was notified on December 10, 1999, by the Lawyers' Fund for Client Protection that an unrelated IOLA check had been dishonored for insufficient funds, respondent "knew he was in trouble" and stopped invading his account. However, respondent acknowledged that but for this notice, which led to this disciplinary investigation, his conversions would have continued until he believed his financial affairs were in order. After he stopped withdrawing funds, in order to restore his finances, respondent ceased paying many of his personal and business expenses.

As a result, the Referee, noting that "respondent did not cause any client whose funds were maintained in his IOLA account to suffer a loss," "that the respondent received no financial benefit in excess of the legal fees to which he was concededly entitled," that intentional conversion of client funds almost always mandates disbarment, but that mitigating circumstances can call for a lesser sanction, recommended a suspension for a period of two years, despite respondent's urging of a lesser sanction and the DDC recommendation of disbarment.

Upon the Hearing Panel's review of the Referee's findings, it noted that this Court has deviated from the usual penalty of

disbarment in intentional conversion cases where the circumstances were sufficiently unusual; however, the Panel's majority did not find such a basis here—"[w]hile Respondent was undoubtedly under pressure, financial pressure cannot constitute an excuse for misuse of client funds and a strong message to that effect is required to protect the public."

Since respondent's misappropriation and intentional conversion of client funds is undisputed, the issue presented by this case is whether a sanction less than disbarment is warranted. This Court has consistently found that "[a]bsent extremely unusual mitigating circumstances," an attorney who has intentionally misappropriated client funds is presumptively unfit to practice law and that such conduct warrants disbarment (*Matter of Lubell*, 190 AD2d 479, 481 [1993]; *Matter of Neufeld*, 268 AD2d 1, 3-4 [2000]; *Matter of Ampel*, 208 AD2d 57, 60 [1995]). While this respondent had an unblemished 30-year career, he fully cooperated with these proceedings (to the point of entering into a detailed prehearing stipulation), there was an absence of any complaining clients or injury to clients, and he immediately repaid the stolen funds to the penny before his clients requested the funds, the fact remains respondent repeatedly used his clients' escrow funds to subsidize his personal and business expenses and his ultimate repayment of the misappropriated funds does not excuse the wrongful conduct (*Matter of Landau*, 180 AD2d 257, 258 [1992]). Moreover, the amount of funds taken and his admission that his withdrawals would have continued if not detected further the argument that this is not a case for deviation from the general rule.

Accordingly, the DDC's petition should be granted, the Hearing Panel's determination and recommendation should be confirmed, respondent disbarred from practice as an attorney and counselor-at-law, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York. Respondent's cross-motion should be denied.

BUCKLEY, P.J., NARDELLI, MAZZARELLI, WILLIAMS and LERNER, JJ., concur.

Respondent disbarred.