[801 NYS2d 299]

In the Matter of ALLAN L. BLUMSTEIN (Admitted as ALLAN LEON BLUMSTEIN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 27, 2005

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Benjamin Brotman & Associates, P.C.* (*Michael A. Gentile* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Allan L. Blumstein was admitted to the practice of law in the State of New York by the First Judicial Department on March 13, 1961. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.

On December 26, 2003, the Departmental Disciplinary Committee filed charges against respondent alleging that he committed acts of professional misconduct by making repeated unauthorized withdrawals from his elderly aunt's trust fund for his own personal use. Respondent had access to the funds by virtue of his acting as cotrustee of the fund. In his answer to the charges, respondent admitted that his conduct violated multiple provisions of the Code of Professional Responsibility, including DR 1-102 (a) (4) and (7) and DR 9-102 (a) (22 NYCRR 1200.3, 1200.46).

A hearing on sanction was held before a referee, at which respondent and four character witnesses testified on his behalf. The hearing testimony established that respondent is a 67-year-old attorney who practiced law as a partner in a major Manhattan law firm from 1970 until 1996, when he retired. Respondent continued to maintain an office at the firm as a retired partner until March 2003, when he resigned as a result of these proceedings.

Respondent had been appointed cotrustee with his cousin of a family trust established by respondent's uncle for the lifetime benefit of respondent's elderly aunt, who suffered from dementia. By agreement with the cotrustee, respondent maintained sole control over the trust account. Respondent's aunt was placed in a nursing home in February 2000, and shortly after, $700,000 was deposited into the trust account.

Beginning in September 2000, respondent regularly withdrew funds from the trust account for his own personal use. Over the next two years, he made monthly withdrawals of between $15,000 and $20,000, nearly depleting the account. Ultimately, respondent stole $517,750 from the trust account. During this same period, respondent failed to pay his aunt's nursing home bills, incurring a debt of $195,818.

In January 2003, respondent notified the cotrustee of his misappropriations from the fund and the cotrustee, in turn,

informed respondent's law firm and the Committee of his misconduct. In March 2003, respondent entered into an agreement with his firm to "cash out" his retirement benefits, resulting in a payment by the firm to the cotrustee of $575,100, plus interest, to restore the stolen funds.

Respondent testified at the hearing that the money taken from his aunt's trust account was not used for emergencies, but rather was used to maintain the affluent lifestyle for his wife and family that he could not sustain after his retirement from the firm. Respondent testified that he knew he had done a terrible thing, but could not stop because he feared that a scaledback lifestyle would jeopardize his marriage. Respondent also testified that he had a drinking problem in the past and suffered a relapse in 2001. According to respondent, his marriage ended in 2003 because of his alcohol problems and financial pressures.

At the conclusion of the evidence, the Committee recommended disbarment while respondent argued for something less. In a report, the Referee sustained the charges and recommended an 18-month suspension. The Referee determined that although disbarment is generally the appropriate sanction in cases involving intentional conversion, respondent's situation presented extraordinary mitigating factors which justified a sanction less than disbarment. The Referee noted respondent's long and distinguished career at a prominent New York City law firm, the compelling character testimony on his behalf, his battle with alcoholism, his concern that cutting back on his lifestyle would adversely affect his marriage and his past pro bono work.

A Hearing Panel agreed with the Referee's liability findings, but disagreed as to sanction. The Panel recommended disbarment based on the distinguishing fact that respondent's conversion was not an isolated incident of wrongdoing, but rather constituted an ongoing pattern of misconduct during which respondent systematically looted the aunt's trust funds until approximately only $5,000 remained. The Panel found no causal connection between respondent's claimed alcoholism and his thefts, nor any compelling mitigating factor such as a medical emergency, potential loss of housing or other sudden crisis that might give rise to a desperate need for funds. Instead, the Panel concluded that respondent's conversion of his elderly aunt's assets was the product of personal greed and a fear of disappointing his wife.

The Committee now moves for an order pursuant to 22 NYCRR 603.4 (d) confirming the findings of fact and conclusions of law in the Hearing Panel's report, and imposing the sanction of disbarment. Respondent cross-moves for an order disaffirming the Hearing Panel's determination insofar as it recommended disbarment, and, instead, imposing a public censure or a suspension of six months or less.

Although we agree with the statement in the Hearing Panel's report that "[t]his entire matter abounds with tragedy," we must also concur with its conclusion that disbarment is the appropriate remedy under the circumstances. This Court has repeatedly stated that absent extremely unusual mitigating circumstances, an attorney who has intentionally converted client funds is presumptively unfit to practice law, and should be disbarred (*Matter of Wertis*, 10 AD3d 141, 144 [2004]; *Matter of Birnbaum*, 308 AD2d 180, 183 [2003]; *Matter of Neufeld*, 268 AD2d 1, 3 [2000]). Moreover, rarely, if ever, will extenuating circumstances be found in situations involving repeated misappropriations over a lengthy period of time (*see Matter of Birnbaum*, 308 AD2d at 183; *Matter of Neufeld*, 268 AD2d at 4).

Here, the thefts committed by respondent were numerous and substantial. As the Panel noted, respondent had ample opportunity during the two-year period to reflect on his misconduct and remedy it, but he never did. Further, he failed to establish any link between his alcoholism and misconduct, and offered no emergency situation that might have provided some explanation for his larcenous conduct. Thus, we agree with the Hearing Panel's conclusion that the financial pressures alluded to by respondent were not sufficiently unusual to deviate from the general rule mandating disbarment in cases of intentional conversion (*see Matter of Wertis*, 10 AD3d at 144; *Matter of Birnbaum*, 308 AD2d at 183).

As we have previously stated, a sanction less than disbarment in these circumstances would send the wrong message to the bar, namely, that the intentional conversion of clients' assets due to financial stress will not result in the most severe punishment. We are loathe to send such a message.

Accordingly, the motion of the Committee should be granted, the findings of fact and conclusions of law of the Hearing Panel confirmed, the cross motion denied, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York and his name stricken from the roll of attorneys, effective immediately.

BUCKLEY, P.J., TOM, MARLOW, GONZALEZ and CATTERSON, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.