[812 NYS2d 54]

In the Matter of STEVEN A. KIRSCHENBAUM (Admitted as STEVEN ALLAN KIRSCHENBAUM), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 23, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for petitioner.

*Michael S. Ross* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Steven A. Kirschenbaum was admitted to the practice of law in the State of New York by the First Judicial Department on January 16, 1984. At all times relevant to this proceeding respondent has maintained an office for the practice of law within the First Judicial Department.

On or about January 15, 2004, the Departmental Disciplinary Committee served respondent with a notice and statement of charges alleging that he committed 16 acts of professional misconduct. Charges 1 through 10 alleged that between July 2, 2002 and August 7, 2002, respondent, who served as administrative partner for his law firm, Hartman & Craven, and as a signatory on its attorney trust accounts,* withdrew funds from an IOLA account on five separate occasions and used those funds for his personal benefit in violation of Code of Professional Responsibility DR 9-102 (a) (misappropriation of funds) and DR 1-102 (a) (4) (misconduct involving dishonesty, fraud, deceit or misrepresentation) (22 NYCRR 1200.46, 1200.3). In doing so, respondent claimed to be borrowing partnership funds under various pretexts; however, none of the so-called loans was authorized or otherwise followed the protocol established at the firm for loans to partners, a privilege which he had availed himself of previously. Moreover, respondent engaged in deceptive conduct to postpone discovery of the missing funds by his partners until he could replace the funds. Charges 11 through 15 alleged that respondent sought and received reimbursements from his law firm for computers and a scanner to which he was not entitled and/or which equipment was never purchased, and for a client dinner that never occurred, which respondent represented to his law firm as a client expense, in violation of DR 1-102 (a) (4). Finally, based upon respondent's misconduct

---

* Hartman & Craven merged with respondent's former law firm, Schiff, Turek, Kirschenbaum & O'Connell (STKO) in 1997. The merger involved an assignment of STKO's assets, including some attorney trust accounts, to Hartman & Craven. Following the merger, the former principals of STKO used the Hartman & Craven attorney trust accounts and ceased using those of STKO. However, some of STKO's accounts were maintained after the merger for funds relating to certain ongoing or incomplete matters pending resolution and disbursement of funds to clients and of fees to Hartman & Craven. The account respondent, a principal in STKO and a signatory on its attorney trust accounts, is alleged to have accessed one of the STKO accounts.

as set forth in Charges 1 through 15, Charge 16 alleged that respondent engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7).

After hearings on liability and sanctions, a referee appointed by this Court sustained 13 of the 16 charges alleged against respondent while dismissing Charges 11, 13 and 14, which related to reimbursements for computers and a scanner (only one computer reimbursement out of the three alleged was found to be improper). He recommended that respondent should be suspended from the practice of law for a period of three years. The referee predicated his recommendation upon a finding that respondent did not act with venal intent.

Subsequently, a Hearing Panel heard oral argument. The Hearing Panel issued its written report sustaining 6 out of the 16 charges. The Hearing Panel recommended that the referee's liability findings as to Charges 2, 4, 6, 8, 10, 12 and 15 be disaffirmed. In essence, the Hearing Panel concluded that since a violation of DR 1-102 (a) (4) requires a finding of venal intent, and the referee properly concluded that respondent did not act with venal intent, there could be no liability with respect to the aforementioned charges, which alleged violations of DR 1-102 (a) (4). The Hearing Panel, however, agreed with the referee that respondent should be suspended from the practice of law for a period of three years.

The Departmental Disciplinary Committee now seeks an order affirming the referee's report and the Hearing Panel's determination of liability as to Charges 1, 3, 5, 7, 9 and 16; disaffirming the Hearing Panel's determination to the extent that it reversed the referee's liability finding as to Charges 2, 4, 6, 8, 10, 12 and 15; disaffirming the referee's and the Hearing Panel's recommendations of a three-year suspension; and disbarring the respondent. The Committee asserts, inter alia, that ample evidence was presented to support a finding that respondent acted with ''venal intent'' when he withdrew IOLA funds without telling his partners or obtaining their permission and, admittedly, used the funds for personal purposes. Thus, he engaged in intentional conversion in violation of DR 1-102 (a) (4), and no extreme mitigating circumstances were presented to warrant deviation from the sanction of disbarment.

Respondent cross-moves for an order disaffirming the conclusions of law of the referee and the Hearing Panel as to Charges 1, 3, 5, 7 and 9, which alleged violations of DR 9-102 (a) and Charge 16, which alleged a violation of DR 1-102 (a) (7); disaf-

firming the conclusions of law of the referee and affirming the conclusions of the Hearing Panel with respect to Charges 2, 4, 6, 8, 10, 12 and 15; affirming the findings of fact and conclusions of law of the referee and Hearing Panel as to no liability with respect to Charges 11, 13 and 14; and disaffirming the referee's and the Hearing Panel's recommended sanction of a three-year suspension, and imposing instead a one-year suspension. In mitigation, respondent alleges that, inter alia, he was having personal financial problems, that he suffers from low-grade chronic depression, that he enjoys a reputation for honesty, that his 21-year professional record is unblemished, that by voluntarily leaving the practice of law, he has effectively suspended himself from practice, and that he has fully cooperated with the Committee, including reporting his misconduct in a timely fashion.

Our review of the evidence presented to the referee and the Hearing Panel indicates that there is ample support for their findings that respondent is guilty of Charges 1, 3, 5, 7 and 9 which alleged violations of DR 9-102 (a) concerning his improper withdrawal and personal use of funds from the IOLA account on five separate occasions.

DR 9-102 (a) provides as follows:

> "Prohibition Against Commingling and Misappropriation of Client Funds or Property. A lawyer in possession of any funds or other property *belonging to another person,* where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own" (emphasis added).

Respondent contends that since the heading of the rule specifically refers to *client* funds or property, a violation of this section can only occur when *client* funds or property are misappropriated, and, not in instances such as this, where partnership fees or funds are involved. This contention relies on the heading of the rule, but ignores its substantive language which makes clear that DR 9-102 (a)'s prohibition is not limited solely to client funds, but rather encompasses any funds or property *belonging to another person.* Thus, the rule plainly applies to the misappropriation of fees belonging to a partnership as well as client funds.

Respondent's reliance on *Matter of Hahn* (195 AD2d 105 [4th Dept 1993], *appeal dismissed* 83 NY2d 951 [1994]), wherein the

Court interpreted DR 9-102 (a) to apply only to client funds and property, and not to funds of a partnership of which the respondent therein was a partner, is misplaced. This Court is not bound by that interpretation. Moreover, since the evidence here indicates that the IOLA account contained both partnership fees and client funds, which were not segregated, and in some instances, the funds which respondent referred to as partnership fees were contested by the partners, there is ample support for the conclusion that of the $16,600 respondent withdrew, of the $17,295 contained in the account, a portion consisted of funds belonging to clients.

Hence, the referee's and the Hearing Panel's findings of liability as to Charges 1, 3, 5, 7, 9 and 16 alleging violations of DR 9-102 (a) and DR 1-102 (a) (7) should be confirmed.

With respect to Charges 2, 4, 6, 8, 10, 12 and 15, alleging violations of DR 1-102 (a) (4), a review of the evidence indicates that there is ample support for a finding that respondent is guilty of those charges. It appears that the referee misinterpreted the facts in finding that no venal intent was involved in respondent's actions, and then the Hearing Panel adopted that mistaken finding and improperly disaffirmed those charges on that ground.

With respect to Charges 2, 4, 6, 8 and 10 involving respondent's unauthorized withdrawal and use of IOLA funds, this Court has consistently held that all that is necessary to sustain a violation of DR 1-102 (a) (4), and the necessary "venal intent," is evidence that the attorney knowingly withdrew IOLA or escrow funds, without permission or authority, and that he used said funds for his own purposes (see Matter of Wertis, 10 AD3d 141 [2004]; Matter of Birnbaum, 308 AD2d 180 [2003]; Matter of Neufeld, 268 AD2d 1 [2000]). Whether an attorney intended to repay, or actually repays, converted funds does not negate a finding of venal intent (see Matter of Nitti, 268 AD2d 41 [2000]; Matter of Mulrow, 241 AD2d 7 [1998]).

Here, respondent withdrew funds, on five separate occasions, from an IOLA account, which he claimed were partnership fees, admittedly without the permission or authority of his partners, who were entitled to a portion of said fees, and used said funds to pay his own personal expenses. The fact that respondent claimed that the funds he withdrew from the IOLA account were not client funds but were legal fees owed to STKO, does not negate venal intent (see Matter of Salinger, 88 AD2d 133 [1982] [Court confirmed a finding that the attorney violated DR

1-102 (a) (4) by pocketing payments from clients that were intended as fees to his firm]; *Matter of Chernoff*, 197 AD2d 110 [1994] [Court confirmed finding that attorney violated DR 1-102 (a) (4) by collecting fees directly from his firm's clients, and then, without the knowledge or permission of his firm, diverted the fees for his own use]).

Although respondent further contended that he was "borrowing" such funds, such claim was belied by the fact that he did not follow established protocol for borrowing funds from the firm, as he had done in the past, and he engaged in the further deception of hiding the monthly bank statement from his partner until he could replace the funds. As previously noted, the fact that he intended to and did in fact repay the funds, does not negate venal intent.

In addition, the fact that respondent was having personal financial problems is no excuse (*see Matter of Wertis, supra*). In fact, the record shows that he had several legitimate avenues open to him to alleviate his situation, i.e., a loan from the partnership secured by his partnership capital account; a loan against his retirement account; or a loan from his brother. His claim that he was unable to ask others for financial help was also belied by the fact that he had done just that on several other occasions.

Particularly egregious here were respondent's actions in giving his brother the account number of STKO's IOLA account, without his partners' permission, so that his brother could deposit funds in said account, and then, without verifying that he did in fact deposit said funds, or checking the account to be sure the funds were there, drawing a check on that account to his brother, and then endorsing the check to himself and using the proceeds for his own personal expenses. These actions further support the conclusion that respondent was engaging in intentional and deceptive conduct.

With respect to Charge 12 (the improper reimbursement request respondent submitted for the computer), here, too, there is ample evidence to support a finding that respondent violated DR 1-102 (a) (4). The referee properly rejected respondent's argument with regard to the computer that it was a good faith mistake based upon the firm's use of his personal credit card, since respondent admitted that no computer was ever ordered, and he should have realized when no computer was delivered or when his VISA statement arrived with no such charge listed that he was not entitled to reimbursement. Moreover, his credit

card statements belied his claim that his personal credit card was frequently used to purchase office computer equipment, since during the relevant period of time, there were only two such charges for equipment, which were the subject of the unsustained Charge 11.

In addition, the computer quotation which respondent submitted in support of his claim that he obtained the quotation, and believed that someone else ordered the computer, has a notation on it which reads, "Leni's Computer." On cross-examination, respondent admitted that Leni was his daughter's name, and that he was considering purchasing a computer for her.

As such, the referee properly concluded that respondent's reimbursement request was nothing more than an attempt to charge a personal expense to Hartman & Craven. The Hearing Panel's rejection of the referee's finding was against the weight of the credible evidence (see Matter of Weinstein, 4 AD3d 29 [2004], lv denied 3 NY3d 608 [2004] [referee's credibility determinations should be accorded due deference]).

With regard to Charge 15, there is ample evidence to support the finding that respondent violated DR 1-102 (a) (4) when he obtained improper reimbursement of $2,000 for a client dinner that never took place. Respondent authorized the payment to himself, and then never held the dinner he allegedly planned, due to the press of other business. Respondent did not reimburse the firm for the improper payment until after the firm commenced its investigation following respondent's revelations concerning the IOLA account. Once again, we find that the Hearing Panel erred in rejecting the referee's determination that respondent's assertions lacked credibility on this issue.

Hence, Charges 1 through 10 and 12, 15 and 16 are sustained; Charges 11, 13 and 14 were properly dismissed.

On the issue of sanction, having concluded that respondent acted with "venal intent" and there being no "extremely unusual mitigating circumstances" to justify a deviation from this Court's consistent holding that attorneys who engage in intentional conversion in violation of DR 1-102 (a) (4) are subject to disbarment, the appropriate sanction here is disbarment (Matter of Birnbaum, 308 AD2d at 183; see also Matter of Wertis, supra; Matter of Neufeld, supra).

Despite respondent's assertion, the record in this proceeding does not contain any evidence that respondent was suffering from a recognized mental or psychological disorder that was

causally connected to his misconduct. The plain and simple fact was that respondent was having personal financial problems and, while his partners were on vacation during the summer, decided to invade a dormant IOLA account for his personal benefit. Hence, notwithstanding that his conduct may have been aberrational, in an otherwise unblemished 21 years of practicing law, that he reported his misconduct to the Committee (albeit when he was aware that his firm was about to report the misconduct) and that he removed himself from the practice of law, he, nevertheless, engaged in deceit on several occasions, and further, engaged in deceit for the purpose of concealing his misconduct. Therefore, he is presumptively unfit to practice law.

Accordingly, the Committee's petition should be granted, the referee's report and the Hearing Panel's determination of liability as to Charges 1, 3, 5, 7, 9 and 16 should be confirmed, the referee's report and the Hearing Panel's determination to the extent that they determined that respondent acted without "venal intent" should be disaffirmed and Charges 2, 4, 6, 8, 10, 12 and 15 should be sustained, the referee's report and the Hearing Panel's determination of no liability as to Charges 11, 13 and 14, should be confirmed, and the referee's and Hearing Panel's recommended sanction of suspension from the practice of law for a period of three years should be disaffirmed, and respondent should be disbarred, and his name stricken from the roll of attorneys and counselors-at-law. Respondent's cross motion should be denied, except insofar as it seeks to confirm the referee's report and the Hearing Panel's determination of no liability as to Charges 11, 13 and 14.

BUCKLEY, P.J., MAZZARELLI, SAXE, NARDELLI and WILLIAMS, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.