[928 NYS2d 499]

In the Matter of DONAL B. BARRETT, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 11, 2011

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Elisabeth A. Palladino* of counsel), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Donal B. Barrett, was admitted to the practice of law in the State of New York by the First Judicial Department on June 27, 1966. By an order entered April 2, 2009 (64 AD3d 187 [2009]), this Court suspended respondent from the practice of law in New York for nonpayment of the biennial registration fees. Respondent's current home address is in the Commonwealth of Massachusetts and there is no record that he has a New York office. Respondent was also admitted to practice in Massachusetts on June 20, 1973, and in the District of Columbia (hereinafter DC) in 1982. However, he had been administratively suspended in that jurisdiction since November 30, 1988 for his failure to pay dues.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, disbarring respondent predicated upon misconduct which occurred in Massachusetts and which gave rise to the imposition of discipline by the Supreme Judicial Court of the Commonwealth of Massachusetts for Suffolk County, as well as the DC Court of Appeals, or in the alternative, sanctioning respondent as this Court deems appropriate.

By order entered August 16, 2006, the Commonwealth of Massachusetts suspended respondent from the practice of law for a two-year period for converting or misappropriating corporate funds for personal use (*Matter of Barrett*, 447 Mass 453, 852 NE2d 660 [2006]). Applying reciprocal discipline to his Massachusetts misconduct, but imposing substantially different discipline, the DC Court of Appeals disbarred respondent from the practice of law in a decision dated March 5, 2009 (*Matter of Barrett*, 966 A2d 862 [DC 2009]).

Respondent's misconduct is predicated upon acts that occurred in connection with respondent's position at NetFax Incorporated (NetFax), a Delaware corporation which he and others founded in 1995 to develop and exploit technology for the transmission of faxes through the Internet. As of August 1996, respondent was NetFax's chief executive officer (CEO) and sole director. In 1996, respondent opened a checking account at U.S. Trust in NetFax's name, on which account he was the sole signatory and for which the bank statements were sent to his home. While respondent provided NetFax with some legal services,

including ensuring compliance with federal and state securities law, he did not bill NetFax for such services and was not specifically compensated for those services.

In April 1996, the Maine Supreme Judicial Court affirmed an order foreclosing on property that respondent and his wife owned in Maine. Respondent believed that the property could be redeemed for $130,000. In July 1996, he withdrew $130,000 from NetFax's U.S. Trust account by issuing a check payable to the bank, which he used to purchase a bank check with which he paid his mortgage company and its counsel. The mortgage company accepted the funds, but deemed them insufficient and refused to discharge the mortgage. Respondent did not obtain NetFax's consent before withdrawing the funds or inform Net-Fax that he would be doing so.

In December 1996, in anticipation of an outside audit of Net-Fax's accounts, respondent borrowed $130,000 from a NetFax investor, Victor Lombardi. He secured this loan based upon his false representation that the money would be used to pay off the mortgage on respondent's Maine property. Respondent did not inform Lombardi that he had already used NetFax's funds for such purpose and intended to use the loan to repay NetFax.

In June 1997, respondent prepared a "reconciliation report" for NetFax's auditors wherein he falsely represented that his $130,000 withdrawal was a payment to Acorn Computers, Inc. (Acorn). In a separate "schedule of deposits," respondent falsely identified the December 1996 deposit as a "[r]eturn of deposit" from Acorn. Respondent knowingly made these misrepresentations to cover up his use of funds. Lombardi later learned of respondent's misconduct. In July 1998, he filed a complaint against respondent with the Massachusetts Bar Counsel.

In September 2002, Massachusetts Bar Counsel filed a petition against respondent seeking his discipline alleging that he (1) improperly used clients' funds to pay a personal debt; (2) made false representations to induce Lombardi to loan him money; (3) created false documents; and (4) provided bar counsel with false documents. Respondent, appearing pro se, denied the substantive allegations. Thereafter, several hearings were held and respondent testified.

In July 2004, the hearing committee issued its report, finding that respondent had an attorney-client relationship with Net-Fax and, in his capacity as CEO and sole director, had a fiduciary obligation to NetFax. The committee rejected respondent's claim that the $130,000 was a permissible advance, which claim

was belied by his conduct in concealing his personal use of the funds. The committee concluded that respondent violated several disciplinary rules, including those involving fraud and dishonesty and the misuse of client or fiduciary funds. In mitigation, the committee found that respondent did not have an attorney-client relationship with Lombardi. In aggravation, the committee found that respondent had a history of prior discipline, to wit, a 1994 admonition for commingling client and personal funds, and negligently spending a client's retainer. The committee recommended that respondent be suspended from the practice of law for seven years.

In December 2004, an appeal panel adopted the committee's factual findings, but rejected certain of its conclusions, including that respondent had intentionally misappropriated funds and committed fraud as an attorney, based on the panel's finding that respondent's legal services were incidental to his corporate work. However, the panel agreed that respondent intentionally misappropriated funds held as a fiduciary and made false entries and misrepresentations to conceal such misuse in violation of Rules of Supreme Judicial Court rule 3:07, DR 1-102 (A) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and (6) (conduct adversely reflecting on fitness to practice law). The panel recommended a two-year suspension.

The Board of Bar Overseers adopted the appeal panel's report. Respondent appealed to a single justice. On April 19, 2005, a single justice of the Commonwealth of Massachusetts, entered an order suspending respondent from the practice of law for two years for converting or misappropriating corporate funds for personal use. Respondent appealed to the full court. By decision and order dated August 16, 2006, the Supreme Judicial Court of Massachusetts affirmed the suspension order. The court agreed with the appeal panel's recommendation, recognizing a distinction between the more serious misconduct of misappropriating client funds while engaged in the practice of law and the misappropriation of nonclient funds. In addition, the court noted that respondent had been afforded notice of the charges and an opportunity to be heard and to appeal.

Respondent did not report his Massachusetts discipline to DC Bar Counsel as required by DC Bar rule XI, § 11 (b). Instead, DC Bar Counsel learned of the suspension through the American Bar Association National Lawyer Regulatory Data Bank on December 19, 2006. DC Bar Counsel then filed a certified copy of the April 19, 2005 order suspending respondent.

On March 14, 2007, the DC Court of Appeals issued an order suspending respondent (who had already been administratively suspended for failing to pay dues) on an interim basis, and directing the Board on Professional Responsibility to either make a recommendation as to the imposition of reciprocal discipline or to determine whether to proceed de novo.

On April 9, 2007, DC Bar Counsel filed a statement with the Board recommending the imposition of substantially different discipline, namely, disbarment. In his response, respondent asserted that he had believed that any jurisdiction to which he had been admitted to practice would be automatically informed of his Massachusetts discipline. Respondent urged that DC impose the same sanction as imposed by Massachusetts in the absence of any finding of criminality, which label respondent found too harsh for his misconduct and did not equate with embezzlement or theft. He argued that DC distinguished between the misappropriation of client and nonclient funds in its imposition of discipline and noted that the standard of proof in the Massachusetts proceedings was the lower "preponderance of evidence" standard. In its reply, DC Bar Counsel argued that respondent could not relitigate his Massachusetts discipline and that DC law must be applied to the Massachusetts findings of fact.

In its December 21, 2007 report and recommendation, the DC Board on Professional Responsibility recommended the imposition of disbarment. The Board noted that while there had been no explicit finding of criminal theft, the Massachusetts court concluded that respondent intentionally converted fiduciary funds for his own use and then fabricated documents and engaged in deceit in an attempt to cover up his misconduct. Accordingly, the Board argued that the record established "the fraudulent intent to sustain a finding of criminal conduct under Rule 8.4 (b)" and that "[r]espondent's overall course of dishonest conduct is sufficiently serious . . . to result in disbarment in this jurisdiction." In his opposition, respondent incorporated his earlier response. In addition, he challenged the characterization of his conduct as "criminal" and claimed that he had intended to quickly repay the $130,000 advance, but could not do so because the bank refused to deliver a mortgage discharge. Respondent also claimed that Delaware law was unclear on the issue of whether his "advance" was illegal.

By decision and order dated March 5, 2009, the DC Court of Appeals accepted the Board's recommendation and held that

respondent's conduct warranted the substantially different discipline of disbarment, effective immediately (*Matter of Barrett*, 966 A2d 862 [DC 2009]).

In seeking an order pursuant to 22 NYCRR 603.3, the Committee correctly argues that respondent is precluded from raising any defenses except: (1) there was a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) there was an infirmity of proof presented to the foreign jurisdiction; or (3) the conduct for which the attorney was disciplined does not constitute misconduct in this jurisdiction (*see* 22 NYCRR 603.3 [c]; *Matter of Musmanno*, 69 AD3d 54 [2009]; *Matter of Rogge*, 51 AD3d 367 [2008]; *Matter of Glatman*, 47 AD3d 230 [2007]; *Matter of Hoffman*, 34 AD3d 1 [2006]).

Since respondent has not submitted a response to this petition, he has not raised any of the aforementioned defenses. In any event, a review of the record establishes that respondent was afforded due process and that sufficient evidence established his admitted misconduct. Moreover, the conduct for which he was disciplined in Massachusetts constitutes violations of parallel disciplinary provisions in this state. Specifically, the conversion of funds held in a fiduciary capacity constitutes conversion "involving dishonesty, fraud, deceit, or misrepresentation" in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (*see e.g. Matter of Kirschenbaum*, 29 AD3d 96 [2006] [violation shown where the attorney knowingly withdraws IOLA or escrow funds, without permission, for his own purposes]; *Matter of Harley*, 298 AD2d 49 [2002] [attorney's conversion of clients' funds by receiving an unauthorized fee based on a backdated retainer agreement warranted disbarment]).

As no available defense under 22 NYCRR 603.3 exists, the only issue for this Court to decide is the appropriate sanction to be imposed. As a general rule, this Court in a reciprocal disciplinary proceeding will defer to the sanction initially imposed by a foreign jurisdiction. However, "our precedents are equally clear that we are not bound by that sanction, and may impose a more severe penalty if the circumstances warrant" (*Matter of Lever*, 60 AD3d 37, 44 [2008]; *see e.g. Matter of Dranov*, 26 AD3d 26, 30-31 [2006] [imposing more severe sanction in reciprocal disciplinary proceeding than that imposed by another state, which was "significantly too lenient"]).

Upon review of our precedents, and our consideration of the nature and severity of respondent's offense, and the

impact of such offense on the bar and public, we find ourselves in complete agreement with the DC Court of Appeals that the sanction of disbarment is warranted under the circumstances here. Indeed, this Court has consistently held that an attorney's misconduct analogous to this case—a client or third-party entrusts him with funds that the attorney converts, without consent, for his own personal use—warrants a disbarment absent extremely unusual circumstances (*see e.g. Matter of Cousins*, 80 AD3d 99 [1st Dept 2010], *appeal dismissed* 16 NY3d 780 [2011], *lv denied* 16 NY3d 713 [2011] [disbarment appropriate where attorney, inter alia, charged a brain damaged client excessive fees which he tried to disguise as a gift]; *Matter of Kirschenbaum*, 29 AD3d 96 [2006] [disbarment appropriate where attorney withdrew funds from an IOLA account on multiple occasions and used those funds for his personal benefit and engaged in deceptive conduct to postpone discovery of the missing funds]; *Matter of Kohn*, 31 AD3d 203 [2006] [disbarment appropriate where attorney, who, while representing sellers in three separate real estate matters, converted and misappropriated escrow funds and failed to return client funds]).

In our view, the fact that the misconduct here did not occur in connection with the practice of law cannot serve to lessen the sanction for an underlying misconduct as egregious and dishonest as otherwise established against this respondent. Rather, when combined with respondent's subsequent actions in obtaining a loan from a company investor under false pretenses, creating false documents to cover up his misconduct, his prior discipline in Massachusetts, his failure to notify this Court or the Committee of the discipline imposed upon him in Massachusetts and DC in violation of this Court's rule (22 NYCRR 603.3 [d]), and the fact that he has already been suspended by this Court for failure to pay his registration fees, together warrant the sanction of disbarment.

Accordingly, the Committee's petition for an order imposing reciprocal discipline should be granted and respondent should be disbarred, and his name stricken from the role of attorneys and counselors-at-law in the State of New York, effective the date hereof.

TOM, J.P., SWEENY, ACOSTA, RENWICK and MANZANET-DANIELS, JJ. concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.