[929 NYS2d 238]

In the Matter of JEFFREY P. SQUITIERI (Admitted as JEFFREY PAUL SQUITIERI), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 8, 2011

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Raymond Vallejo* of counsel), for petitioner.

*Michael A. Gentile,* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Jeffrey P. Squitieri was admitted to the practice of law in the State of New York by the First Judicial Department on August 4, 1997 as Jeffrey Paul Squitieri. At all times relevant herein, respondent has maintained an office for the practice of law within the First Department.

The Departmental Disciplinary Committee (Committee) now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) confirming the Hearing Panel's determination regarding liability and recommendation that respondent be disbarred. Respondent cross-moves to disaffirm the Hearing Panel's determination insofar as charges two and nine were sustained and disbarment was recommended. He instead seeks the imposition of suspension for not more than two years irrespective of whether charges two and nine are sustained.

The Committee served respondent with a notice and statement of nine charges, alleging, inter alia, that respondent commingled and misappropriated client funds in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) (count one); that by intentionally converting funds from his escrow account at Chase Bank for his own use, respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (count two); and that based on all of the foregoing misconduct, respondent engaged in conduct that adversely reflects on his fitness to practice as a lawyer in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (count nine).

Respondent admitted charges three through eight which alleged various bookkeeping violations and neglect of a client matter. With respect to charge one, respondent admitted that he commingled his own funds with client funds, but he denied misappropriating client funds. Respondent denied liability under charges two and nine. With respect to respondent's liability for misappropriation and intentional conversion of client funds, respondent argued that his judgment and thought processes were

so negatively impacted by his psychiatric disorders and alcoholism triggered by a divorce that he could not have formed the venal intent necessary to sustain the disputed charges.

The Referee sustained all charges and following a hearing as to sanction, he recommended that respondent be disbarred. A Hearing Panel confirmed the Referee's report in all respects.

The well-reasoned determination of the Hearing Panel should be confirmed. The Panel properly sustained charge two alleging that by deliberately converting funds to his own use, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4). Respondent's protestations that he lacked venal intent because he did not intend to permanently deprive his clients of their funds were properly rejected. This Court has repeatedly "held that all that is necessary to sustain a violation of DR 1-102 (a) (4), and the necessary 'venal intent,' is evidence that the attorney knowingly withdrew IOLA or escrow funds, without permission or authority, and that he used said funds for his own purposes. Whether an attorney intended to repay, or actually repays, converted funds does not negate a finding of venal intent" (*see Matter of Kirschenbaum*, 29 AD3d 96, 100 [2006] [citations omitted]).

Moreover, respondent failed to prove a sufficient causal connection between his mental condition and his conversion of client funds to support a finding that he lacked venal intent. While there is no doubt that respondent's alcoholism and his impaired mental health contributed to his behavior, many aspects of his behavior during the relevant period, including his sophisticated check kiting scheme and concealment of his use of the escrow account from the divorce court, are inconsistent with the opinions of his mental health experts that respondent's cognitive ability was so negatively impacted by his impending divorce and his alcoholism that he was incapable of making reasoned intelligent decisions (*compare Matter of Salo*, 77 AD3d 30 [2010] [medical experts agreed that respondent invaded lien funds inadvertently, without specifically intending to misappropriate third-party funds, as the direct result of posttraumatic stress disorder]).

As to sanction, intentional conversion of escrow funds requires disbarment absent "extremely unusual mitigating circumstances" (*Matter of Kirschenbaum*, 29 AD3d at 102; *Matter of Neufeld*, 268 AD2d 1, 3-4 [2000]). The Panel properly concluded that respondent did not show "extremely unusual mitigating circumstances" to avoid disbarment.

In addition to finding that respondent failed to show a causal connection between his mental condition and his escrow violations, the Panel properly considered in aggravation that respondent's actions in obtaining loans to restore funds to his escrow account, his concealment of his invasion of the escrow account from the divorce court and his check kiting scheme designed to create the illusion of a greater amount of currency, all demonstrated that he knew at the time of his misconduct that his handling of the escrow account was wrong. Furthermore, although respondent cooperated with the Committee by admitting many of the Committee's charges, he first revealed his check kiting scheme during cross-examination at the hearing, showing that he had previously been less than candid with the Committee, as well as with the medical witnesses, and that his earlier testimony that he did not know the purpose of various money transfers was deceptive. Finally, as distinguished from *Matter of Molinini-Rivera* (24 AD3d 36 [2005]), involving the intentional conversion of one client's funds, respondent put at risk the funds of 21 clients by allowing his escrow account to have a negative balance on several occasions.

Accordingly, the Committee's petition to confirm the Hearing Panel's report should be granted, the respondent's motion to disaffirm denied, and respondent should be disbarred from the practice of law.

TOM, J.P., RENWICK, FREEDMAN, ACOSTA and MANZANET-DANIELS, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.