[634 NYS2d 116]

In the Matter of CONSTANTINE N. VAGIONIS (Admitted as CONSTANTINE NICHOLAS VAGIONIS), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 30, 1995

## APPEARANCES OF COUNSEL

*Selvyn Seidel* of counsel *(Job Taylor, III,* with him on the brief; *Hal R. Lieberman,* attorney), for petitioner.

*Charles Haydon* of counsel *(Dublirer, Haydon, Straci & Victor,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Constantine N. Vagionis, was admitted to the practice of law in the State of New York by the Second Judicial

Department on March 30, 1960, under the name Constantine Nicholas Vagionis. At all times pertinent to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

The respondent's law practice has been devoted almost exclusively to immigration matters. He has not devoted his full time to the practice of law, functioning as an agent or representative for foreign citizens and corporations, as well as, occasionally, managing real estate. For the first 30 years after his admission he had never received any funds which required deposit in a special account.

In 1986, Professional Conversion Group (PCG), a New Jersey enterprise, was engaged in some real estate projects. Ronald Parente was a salesman for PCG. Themisticles Psomiadis was an automobile dealer and investment advisor who periodically visited the PCG offices. In 1986, Parente asked Psomiadis to arrange for the formation of two Liberian corporations. Psomiadis asked the respondent to undertake the incorporation, saying that these corporations would be stock trading vehicles for New Jersey and foreign investors. Respondent accomplished the incorporation, but was told by Psomiadis that he would have to wait for the payment of $5,000, which included $2,000 in disbursements.

Martin Willick was a physician, practicing in New Jersey, who made real estate investments with PCG. Dr. Willick wanted to purchase an apartment in a cooperative being converted by PCG and gave Parente two checks totalling $50,000. Parente told him to make the checks payable to "C.N. Vagionis Trust Acct." Psomiadis had told Parente to have the checks drawn that way. Dr. Willick was told by Parente that respondent was the lawyer representing the cooperative.

Parente gave these checks to Psomiadis for investment in the stock market. Psomiadis gave the checks to respondent, telling him to keep the $5,000 which was owed for his fee plus disbursements, and to forward the balance to a named stock broker. Upon inquiry to Psomiadis regarding the manner in which the checks were drawn, the respondent was advised that "this is the way it's done in New Jersey." The respondent deposited the checks in a "special disbursements account" which he maintained at the National State Bank in Elizabeth, New Jersey. This was not an escrow account, being used for office and personal purposes, on which respondent's nonlawyer

employees were authorized signatories. The respondent did not maintain a trust account until some four years later. The $45,000 remaining, after payment of fees and expenses, was transferred by wire to the designated stock broker for the account of one of the Liberian corporations which the respondent had caused to be formed.

The broker invested the funds as directed by Psomiadis. He never consulted the respondent, who had nothing to do with the account. The investments were unsuccessful, the account was closed, with the $7,500 remaining being sent to Parente.

PCG was bankrupt in the fall of 1986. In February of 1990, Dr. Willick contacted the respondent and asked him to account for the $50,000. The respondent told Dr. Willick that he had disbursed the funds as directed by Psomiadis. Dr. Willick brought an action in New Jersey against respondent and others to recover sums lost in real estate transactions, including the $50,000 here involved. In March of 1992, plaintiffs were granted summary judgment with respect to the $50,000 against some of the defendants, not including respondent. In February of 1994, after some restitution, the action was dismissed against all defendants, including the respondent.

After conclusion of the hearings, the Panel determined that respondent had commingled funds in violation of Code of Professional Responsibility DR 9-102 (A) (22 NYCRR 1200.46) with regard to the Willick checks. The Panel stated that upon receiving the Willick checks, respondent was in possession of funds belonging to another, which possession was incident to his practice of law. He was thus a fiduciary. The fiduciary funds should have been kept separately. The Panel found the facts to be "quite atypical", but held that this did not excuse the respondent from his obligation to treat as trust funds those which were payable to his trust account. It was found that he was obligated to inquire concerning the way the checks were drawn, and that it was insufficient for him to accept assurance that "this is the way it's done in New Jersey." There was no justification for his having relied upon Psomiadis' statements and not inquiring of Dr. Willick.

On the issue of sanction, the Committee took into account the respondent's 35-year unblemished record as an attorney and found that he had no venal intent. The Committee did find, however, that the respondent was "utterly ignorant of his ethical and professional responsibilities in a critical area." A three-month suspension was recommended.

By petition dated May 16, 1995, the Departmental Disciplinary Committee seeks an order confirming the findings and

conclusions of the Hearing Panel and asks that the Court impose any sanction it deems just and equitable, not less than the three-month suspension recommended.

The respondent was negligent, if not reckless, in the way the Willick checks were handled. There is ample evidence in the record to support the Hearing Panel's findings that respondent committed disciplinary violations. The manner in which the checks were drawn made it absolutely plain that they were to be deposited only in a trust account. There was no justification for accepting Psomiadis' conflicting instructions and for not contacting Dr. Willick concerning them.

On the issue of sanction, this Court has consistently held that where attorneys misappropriated client or third-party funds without intending to deprive anyone of them permanently, suspension is an appropriate sanction. *(See, Matter of Anderson*, 168 AD2d 59; *Matter of Altomerianos*, 160 AD2d 96; *Matter of Altschuler*, 139 AD2d 311.)

In imposing sanction in this case, we consider several mitigating factors. The respondent has an otherwise unblemished disciplinary record in 35 years of practice. The violation occurred as the result of negligence, not willfulness. The respondent did not personally profit from the violation in any way. There was evidence in the record of good works performed by the respondent.

Accordingly, the petition of the Departmental Disciplinary Committee is granted; the Hearing Panel's findings of fact and conclusions of law are confirmed; its recommended sanction is disaffirmed; the respondent's cross motion is denied; and the respondent is suspended from the practice of law for a period of six months, effective 30 days after the date of this order; and the respondent is directed to sit for the Multi-state Professional Responsibilities Examination given next after the entry of this order and to supply evidence of a passing grade before this suspension may be lifted.

SULLIVAN, J. P., ROSENBERGER, ROSS, ASCH and TOM, JJ., concur.

Petition granted, the Hearing Panel's findings of fact and conclusions of law confirmed, the Panel's recommendation as to sanction disaffirmed, the cross motion denied and respondent suspended as an attorney and counselor-at-law in the State of New York for a period of six months, effective January 2, 1996, and until the further order of this Court.