[13 NYS3d 539]

In the Matter of JOEL C. SCHNEIDER, an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT,
Petitioner.

Second Department, July 15, 2015

**APPEARANCES OF COUNSEL**

*Mitchell T. Borkowsky*, Hauppauge (*Daniel M. Mitola* of counsel), for petitioner.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated August 19, 2013, containing 10 charges of professional misconduct. Following a prehearing conference on March 21, 2014, and a hearing on May 14, 2014, the Special Referee sustained all the charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline as the Court deems just and proper. The respondent has neither opposed, nor otherwise responded to, the Grievance Committee's motion.

Charge 1 alleges that the respondent misappropriated funds entrusted to him, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: At all

times relevant herein, the respondent maintained and was a signatory on an escrow account with JPMorgan Chase Bank denominated "Sommer & Schneider LLP, Attorney Escrow Account IOLA" (hereinafter the respondent's escrow account). On August 2, 2011, the escrow account contained $55.32. On or about August 3, 2011, Norman W. Nick of Boca Raton, Florida, wired $80,000 into the respondent's escrow account at the direction of the respondent's father, Irwin Schneider. At no relevant time did the respondent represent Nick in any legal matter, represent any other party in connection with a legal matter involving Nick, or enter into an escrow agreement concerning his obligations and duties as escrow agent with respect to the $80,000.

At no time prior to August 3, 2011 did the respondent have any communication with Nick concerning the $80,000. At no time between August 3, 2011 and in or about March 2012 did the respondent communicate with Nick concerning the $80,000.

Nick wired the $80,000 into the respondent's escrow account in connection with a purported investment transaction orchestrated by the respondent's father, Irwin Schneider, a disbarred New York attorney, who was convicted in 1988 of securities fraud in the United States District Courts for the Southern and Eastern Districts of New York.

Between August 3, 2011 and in or about March 2012, the respondent did not disburse Nick's $80,000 in connection with any purported investment by Nick. Between August 3, 2011 and March 6, 2012, the respondent disbursed from his escrow account: (1) approximately $48,129.70 of the $80,000 to himself, or for his own benefit; (2) approximately $17,000 of the $80,000 to Irwin Schneider; and (3) approximately $10,741 of the $80,000 for the benefit of the respondent's friend and client, Bruce Federman, all without the authorization or consent of Nick.

As of March 6, 2012, approximately $4,128.76 of Nick's $80,000 remained on deposit in the respondent's escrow account. The purported investment opportunity, which was the basis for Nick's $80,000 wire deposit, had not come to fruition.

On or about March 6, 2012, Nick contacted the respondent for the first time, asking for the return of his $80,000. On or about March 6, 2012, Irwin Schneider, at the respondent's request, caused $20,000 to be wired into the respondent's escrow account for the purpose of providing a partial refund to Nick. On or about March 15, 2012, the respondent wired

$22,000 from his escrow account to Nick, as a partial reimbursement.

The respondent has failed to return the balance of $58,000 to Nick.

Charge 2 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, by misrepresenting to Nick the status of the funds he deposited in the respondent's escrow account, in violation of rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: On or about March 8, 2012, the respondent advised Nick, by email, that he was not aware of the identity of the funds in his escrow account, that he had hired an accountant to reconcile the account, and that Nick's funds would be returned to him once the reconciliation was completed. The respondent had not hired an accountant to reconcile the account at that time. The respondent knew or should have known that as of March 6, 2012, the only funds on deposit in his escrow account, approximately $4,128.76, were the remaining balance of Nick's $80,000 deposit. The respondent knew or should have known that as of March 6, 2012, he had depleted Nick's $80,000 deposit by disbursing all but approximately $4,128.76 to himself or to Irwin Schneider, or on behalf of Bruce Federman.

Charge 3 alleges that the respondent violated his fiduciary duties as an escrow agent by abdicating control over his escrow account to a nonattorney, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Between in or about 2010 and in or about 2012, most, if not all, of the funds deposited into, and disbursed from, the respondent's escrow account were funds solicited from third parties by Irwin Schneider, in connection with purported investment transactions. The respondent did not know the third parties wiring funds into his escrow account, and did not communicate with the third parties concerning the funds, or the purported transactions for which they were deposited and disbursed. The respondent did not enter into any agreements with the third parties concerning his obligations and duties as escrow agent with respect to their funds, or the purported transactions. The respondent did not provide any legal services to the third parties with respect to their funds, or the purported transactions. The respondent disbursed the funds at the direction of Irwin Schneider. The respondent relied on Irwin Schneider to account for the funds on deposit in the escrow account relative to the third parties, without any oversight or supervision.

Charge 4 alleges that the respondent violated his fiduciary duties as escrow agent by failing to maintain required book-keeping records for the escrow account, in violation of rule 1.15 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Between in or about 2010 and 2012, the respondent failed to maintain a record or ledger of the activity in his escrow account that detailed, at or near the time of the events recorded, the source and purpose of each deposit into, and disbursement from, his escrow account in the ordinary course of his practice.

Charge 5 alleges that the respondent violated his fiduciary duties as an escrow agent by making cash withdrawals from the escrow account, and not to a named payee, in violation of rule 1.15 (e) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: Between May 10, 2010 and April 27, 2012, the respondent made 36 separate cash withdrawals to himself from the escrow account, ranging in amounts from a low of $200 to a high of $1,500. In addition, the respondent issued escrow check No. 1668, made payable to "cash," in the amount of $750, on September 30, 2010.

Charge 6 alleges that the respondent commingled personal funds and funds with which he was entrusted as a fiduciary on behalf of others, in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: At all times relevant herein, the respondent held funds entrusted to him as a fiduciary in his escrow account. On October 22, 2010, the respondent deposited $7,500 in earned fees in his escrow account, instead of his operating account, to pay the firm's expenses. The respondent issued escrow check No. 1671, payable to Colonial Holdings, to pay rent for his law office for a period of two months. The respondent issued escrow check No. 1672, payable to T-Mobile, to pay for his personal cell phone. On October 27, 2010, the respondent distributed $199.70 from his escrow account to "W Nassau-Long [Island] Cable [Payment]," to pay for Internet service for his law office. On October 29, 2010, the respondent distributed $300 from his escrow account to Cablevision to pay for phone service for his law office. On October 6, 2011, the respondent distributed $199.70 from his escrow account to Cablevision to pay for phone service. On December 13, 2011, the respondent transferred $350 from his escrow account to a checking account in the name of his daughter, Chelsea R. Schneider, at JPMorgan Chase Bank. On March 12, 2012, the respondent borrowed funds already on deposit in

his escrow account for a continuing client, Bruce Federman, for the purpose of transferring funds to his daughter, Chelsea R. Schneider. On March 23, 2012, the respondent transferred $4,200 from his escrow account to a checking account in the name of his daughter, Chelsea R. Schneider, at JPMorgan Chase Bank. On March 26, 2012, $4,178.25 was electronically transferred from the checking account in the name of his daughter, Chelsea R. Schneider, at JPMorgan Chase Bank, to University at Buffalo, the State University of New York.

Charge 8 alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by paying for personal and office expenses from his escrow account, instead of his operating account, in violation of rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: At all relevant times herein, the respondent maintained an operating account at JPMorgan Chase Bank denominated "Sommer & Schneider LLP" (hereinafter the respondent's operating account). The respondent obtained a $50,000 line of credit against the operating account. As of the date that the respondent deposited $7,500 in earned fees into his escrow account to pay business and personal expenses, the respondent owed approximately $38,000 on the $50,000 line of credit. The respondent deposited the $7,500 into his escrow account to pay business and personal expenses to avoid an automatic debit against deposits in the operating account, which would have occurred had he deposited the funds in his operating account.

Charge 9 alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer by failing to fully and timely cooperate with the Grievance Committee, in violation of rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows: On or about April 20, 2012, the Grievance Committee received a complaint from Nick regarding the $80,000 in wired funds. By letter dated May 2, 2012, sent via first-class mail, the Grievance Committee provided the respondent with a copy of Nick's complaint, and requested him to submit a written answer, as well as a copy of his ledger and bank statements for a period of eight months, within 20 days. The respondent failed to submit a written answer.

By letter dated May 30, 2012, sent both via first-class mail and certified mail, return receipt requested, the Grievance Committee provided the respondent with a copy of its May 2, 2012 letter, advised him that his failure to respond or otherwise cooperate constituted professional misconduct independent of

the merits of the underlying complaint, and requested him to submit a written answer within 10 days. The return receipt card for the certified letter was signed, reflecting delivery.

Although an extension of time to respond was granted until June 21, 2012, the respondent failed to comply. Only after another letter dated June 27, 2012 was sent to the respondent did he submit an answer, which was dated July 5, 2012, but the response did not include a copy of the respondent's ledgers or bank statements, and did not address his failure to timely respond to the Grievance Committee's prior letters.

By letter dated July 17, 2012, sent via first-class mail, the Grievance Committee requested the respondent to provide, within 15 days, additional information regarding his escrow account, and the relationship that his father, Irwin Schneider, had with the respondent's law firm. The respondent failed to submit a timely written answer to this letter, and to three additional letters sent to him by the Grievance Committee, dated August 9, 2012, August 13, 2012 and September 4, 2012, respectively.

By letter dated September 10, 2012, the Grievance Committee requested the respondent to submit a written answer addressing the complainant's response to the respondent's original answer, provide a copy of his ledger for a 19-month period, and provide the additional information requested in the Grievance Committee's letter dated July 17, 2012. The letter also confirmed that an extension of time was granted until October 1, 2012.

By letter dated October 9, 2012, the respondent provided some of the information requested, but did not provide a copy of his ledger for the 19-month period requested.

By letter dated December 7, 2012, the Grievance Committee requested that he contact it to schedule an examination under oath (hereinafter EUO) within 10 days of that letter. The respondent failed to timely answer.

By letter dated January 10, 2013, which was hand-delivered to the respondent on January 14, 2013, the Grievance Committee served the respondent with a judicial subpoena dated December 27, 2012, requiring him to submit to an EUO at its office on January 22, 2013 (which was later adjourned to February 15, 2013), as well as to respond to the subpoena duces tecum dated December 27, 2012, requiring him to provide a copy of his ledger by January 15, 2013 (which was later adjourned to February 8, 2013).

On or about February 8, 2013, the respondent provided a copy of a ledger. On February 15, 2013, the respondent appeared at the Grievance Committee's offices for his EUO. The ledger provided by the respondent had not been maintained contemporaneously with the transactions recorded therein, but was recently created for purposes of responding to the Grievance Committee. The ledger did not contain all of the information required by the Rules of Professional Conduct (22 NYCRR 1200.0).

Charge 10 alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to fully and timely cooperate with the Grievance Committee, in violation of rule 8.4 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), as set forth in the factual allegations specified in charge 9.

Based on the respondent's admissions and the evidence adduced, we find that the Special Referee properly sustained charges 1 through 6, and 8 through 10, but not charge 7, which was duplicative of at least one other charge.

With respect to the misappropriation charge, the respondent admitted substantially all the factual allegations. However, at the disciplinary hearing, since it was undisputed that Nick was not his client, the respondent vigorously denied that he had a fiduciary obligation towards the $80,000 in "non-client funds" on deposit in his escrow account. As a consequence, he maintained that he was not guilty of misappropriation.

We reject this contention, as an attorney who is in the possession of funds belonging to another, incident to his practice of law, is a fiduciary (see Matter of Vagionis, 217 AD2d 175 [1995]; NY St Bar Assn Comm on Prof Ethics Op 532, *2 [1981] ["When a lawyer serves as an escrow agent his obligations are those of a trustee"]). Furthermore, the prohibition against misappropriation is "not limited solely to client funds, but rather encompasses any funds or property belonging to another person" (Matter of Kirschenbaum, 29 AD3d 96, 99 [2006]; see NY City Bar Assn Comm on Prof Ethics Formal Op 1986-5, *1 [1986] ["the requirements . . . pertaining to the preservation, safekeeping and use of client funds . . . are applicable to escrowed funds held by a lawyer, although such funds are not literally funds of clients"]).

By the respondent's own admission, his status as an attorney was the entire reason that his escrow account was employed for the Nick transaction and other transactions involving his

father. The respondent conceded that he was an "escrow agent." Here, the respondent admitted that he knew that $80,000 was wired into his firm's escrow account, and that the funds came from Nick, as reflected in the notation "fbo Norman W. Nick" on his bank statement.

In further defense against the misappropriation charge, the respondent claimed that his father, whom he was led to believe had such authority, authorized all the various disbursements made against the $80,000. We find that the respondent knew or should have known that he had a fiduciary obligation to both parties to the prospective investment transaction for which the subject funds were deposited in his escrow account, and not just to his father (*see Matter of Hollendonner*, 102 NJ 21, 504 A2d 1174 [1985]). Here, the respondent drew against the $80,000, without Nick's authorization and consent, for, inter alia, his own benefit, as well as the benefit of his father. The respondent continued to make unauthorized withdrawals against the $80,000 even after Nick contacted him, in or about March 2012, and demanded the return of his money.

As for charge 3, which alleged the respondent's abdication of control over his escrow account, the evidence revealed that the respondent and his former partner, Herbert H. Sommer, who is now deceased, allowed the respondent's father to utilize their firm's escrow account to "close his deals," and that the respondent and Sommer admittedly served as mere "conduits" and "movers" of money for the respondent's father. The respondent testified before the Special Referee that his father "direct[ed]" the movement of money through his firm's escrow account. The respondent admitted that this was not an appropriate use of the account. Further, he admitted in an email communication to Nick that "[w]hile there are funds in my firm's account, I am unaware as to what belongs to whom." An attorney may not allow a nonattorney to exercise unfettered control over the attorney's escrow account (*see e.g. Matter of Tanella*, 104 AD3d 94 [2013]; *see also Matter of Rubenstein*, 50 AD3d 74 [2008]; *Matter of Duboff*, 21 AD3d 206 [2005]).

In mitigation, the respondent asked at the hearing that the following factors be taken into consideration: that he made mistakes, but they were made without venality, that he never intended to prejudice a client, that the charges did not involve client funds incident to the practice of law, that he mistakenly relied on his former partner, who was also his brother-in-law, and mistakenly trusted his father, and that he intends to pay back the balance of the money owed—$58,000—to Nick.

Notwithstanding the aforementioned mitigating factors, we find that the respondent has demonstrated by his conduct an utter disregard for the fiduciary obligations attendant to the maintenance of escrow accounts by misappropriating funds on deposit in his escrow account. Moreover, he abdicated total control over his escrow account to a disbarred attorney.

Under the totality of the circumstances, we find that disbarment is warranted. Additionally, any future application for reinstatement shall be accompanied by proof that the respondent has repaid the balance of $58,000 owed to Nick.

MASTRO, J.P., RIVERA, SKELOS, DILLON and BALKIN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted to the extent that charges 1 to 6, and 8 to 10 are sustained, and the motion is otherwise denied; and it is further,

Ordered that the respondent, Joel C. Schneider, is disbarred, effective immediately, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Joel C. Schneider, shall comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Joel C. Schneider, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Joel C. Schneider, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).