[802 NYS2d 136]

In the Matter of GAETANELLA MOLININI-RIVERA, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 13, 2005

APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jun Hwa Lee* of counsel), for petitioner.

*Dimitrios C. Fotopoulos* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Gaetanella Molinini-Rivera was admitted to the practice of law in the State of New York by the First Judicial Department on January 22, 1996. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

On November 18, 2003, the Committee served respondent with a notice and statement of charges alleging, inter alia, that she misappropriated client funds from her IOLA account, failed to maintain a proper balance and proper records for that account, neglected an immigration matter entrusted to her, submitted false documents to a Small Claims Court Judge and made misrepresentations to the Committee during its investigation. Of the 16 total charges, respondent admitted liability with respect to six of them, but denied the others. The remaining charges and sanction were the subject of a hearing before a Referee.

The Referee's hearing addressed respondent's alleged misconduct in connection with two separate legal matters. In the first matter, a personal injury action in which respondent represented the plaintiff, respondent received a settlement check for $5,000 on July 11, 2000, which she deposited in her IOLA account. However, she did not inform the client that she had received the check and, instead, she made unauthorized withdrawals from the account for her personal use. After the Committee inquired about the matter 2½ years later, respondent wrote a check to the client for $1,835, withholding the remaining amount to satisfy a $1,500 doctor's lien and to pay her $1,665 legal fee. Subsequently, she falsely testified during depositions before the Committee that she had previously paid the doctor's lien "in cash," when in fact she had not done so. The client obtained a Small Claims judgment against respondent for the amount she had withheld to satisfy the lien.

Based on the above, the Referee found three violations of Code of Professional Responsibility DR 1-102 (a) (4) (prohibit-

ing conduct involving dishonesty, fraud, deceit, or misrepresentation) and three violations of (a) (5) (prohibiting conduct that is prejudicial to the administration of justice) and two violations of DR 9-102 (a) (prohibiting misappropriation of client funds), two violations of (c) (4) (requiring prompt payment or delivery to client of funds in possession of lawyer that client is entitled to receive) and one violation of (d) (1) and (2) (requiring proper records for all deposits and withdrawals into IOLA account) (22 NYCRR 1200.3, 1200.46).

In the second matter, respondent represented a client in an immigration matter, but terminated the representation after discovering the client's illegal purpose. The client demanded the return of the $2,000 retainer and, when respondent refused, he brought an action in Small Claims Court. To support her claim of legal services performed, respondent submitted an INS receipt as proof of an application submitted on the client's behalf. The court found that the receipt had been altered, although it did not determine by whom, and the Referee concluded that respondent was "grossly negligent" in having used such a document in court. Judgment was granted to the client in the Small Claims matter.

Based upon the above facts and respondent's admissions, the Referee found that respondent had lied about having made the INS application and acted deceitfully in submitting the INS receipt as evidence of the claimed filing, both in violation of DR 1-102 (a) (4). The Referee also found that respondent neglected the immigration matter in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30), and that all of her conduct with respect to this client adversely reflected on her fitness to practice law in violation of DR 1-102 (a) (7).

At a subsequent mitigation hearing, respondent testified that her conduct was the result of severe personal, emotional and financial problems. Respondent testified that her former husband physically and verbally abused her throughout the course of their 16-year marriage, which ended in divorce in 1995. Although respondent suffered physical injury on many occasions, she did not seek an order of protection because she felt it was only a piece of paper that only would serve to further enrage her husband. Despite the abuse, respondent managed to attend law school part-time, work as a legal secretary at night and still provide a home for her son and stepsons.

Respondent also pointed to her unfortunate professional association with a solo practitioner, who convinced her to join his

practice but never provided proper training or guidance. He only offered her unprofitable and problem cases, and never provided her with adequate staffing. Ultimately, when the relationship began to sour, he harassed and stalked her, forcing her to quit in 1999. After her departure, numerous former clients filed disciplinary complaints against respondent, apparently at the urging of her former colleague. Making matters worse, respondent had difficulty responding to these complaints as the former colleague repeatedly denied her access to her computer and legal files. As a result of respondent's career developments, she began experiencing severe financial difficulties.

Respondent also offered evidence from a licensed psychologist who concluded that she suffered from multiple disorders, some of which were the result of the chronic abuse and mistreatment she had received. Specifically, the psychologist's report stated that she had developed "Dependent Personality Disorder," that left her vulnerable to being exploited and abused. Subsequently, her abusive relationships resulted in additional disorders, including "Post-Traumatic Stress Disorder and Major Depressive Disorder, recurrent, in partial remission." The report further found a causal connection between these disorders and her professional misconduct, in that the stress and anxiety she experienced from these disorders resulted in her behaving in a "self-defeating" way, whereby instead of managing stressful situations she would remain passive and capitulate to them.

The Referee, acknowledging this Court's precedents mandating disbarment in cases involving intentional conversion, recommended disbarment, albeit reluctantly. The Referee specifically found that "[m]itigation is shown in the form of respondent having been subjected to severe financial problems, abuse in the past by her then husband and more recently serious and unsettling controversy with a senior former colleague." Indeed, the Referee strongly suggested that in light of respondent's demonstrated desire to improve her conduct and her efforts at restitution, a two or three-year suspension might be sufficient.

The Hearing Panel agreed with the Referee that respondent's mitigating circumstances evoked sympathy, but likewise concluded that they were not sufficiently extraordinary to avoid disbarment. The Panel found no causal connection between respondent's problems with her husband and colleague and her misconduct, and was especially swayed by respondent's dishonesty with the Committee during its investigation.

The Committee now petitions the Court for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) confirming the

determinations of the Hearing Panel and Referee and disbarring respondent.

This Court has consistently held that absent extremely unusual mitigating circumstances, an attorney's intentional conversion of client funds constitutes grave misconduct requiring disbarment (*Matter of Wertis*, 10 AD3d 141, 144 [2004]; *Matter of Birnbaum,* 308 AD2d 180, 183 [2003]; *Matter of Neufeld*, 268 AD2d 1, 3-4 [2000]). Contrary to the Hearing Panel's conclusion, however, we find that this is one of those rare cases where exceptional circumstances have been demonstrated.

Initially, although respondent has admitted the intentional conversion of client funds, this is not a case where respondent was guilty of repeated acts of theft or systematic looting (*compare Matter of Birnbaum*, 308 AD2d 180 [2003]; *Matter of Neufeld*, 268 AD2d 1 [2000]). Rather, although the record is unclear as to the amount of withdrawals, it is clear that the conversions charged took place within a two-month period. Thus, insofar as disbarment is urged based on respondent's intentional theft, such theft was by all accounts an isolated occurrence (*Matter of Albanese*, 274 AD2d 284 [2000]; *Matter of Munzer*, 261 AD2d 87 [1999]). In addition, not to be ignored is that respondent has repaid the funds owed to this client and has expressed remorse for her actions.

More significantly, we disagree with the Hearing Panel's conclusion that respondent failed to demonstrate any causal connection between her personal and psychological problems and her subsequent misconduct. The abuse suffered by respondent at the hands of her former husband and colleague stands uncontradicted in the record. The Referee found these mitigating circumstances quite compelling, and the Hearing Panel was not unsympathetic. Although the Hearing Panel apparently found these incidents temporally remote from the professional misconduct at issue, respondent's testimony and the psychologist's report make a convincing showing that the long-term effects of her chronic mistreatment played a significant role in her actions.

At the time respondent converted her client's funds, she was under tremendous financial pressure due to her contentious separation from her former colleague. She was unemployed, responsible for caring for her son, and was being harassed and stalked by said colleague. In addition, she was the subject of a deluge of disciplinary complaints from former clients, many of

whom had some connection to her former colleague. Respondent encountered this factual scenario with what her treating psychologist describes as a debilitating "self defeatism" resulting from an abusive marriage and unhealthy professional relationship. Instead of working toward a manageable solution to her financial and disciplinary woes, she remained passive, used client funds to cover expenses and defaulted on several disciplinary complaints. As described by her psychologist, she capitulated.

Of course, respondent's conversions and false statements to the Committee constitute serious misconduct, demanding a severe sanction. Respondent had a duty to properly maintain her IOLA account and to understand her obligations with respect to client's funds. However, given that her misconduct immediately followed a series of abusive relationships that gave rise to a diagnosed psychological condition, we conclude that such mitigation is sufficient under the circumstances to avoid the penalty of disbarment.

Accordingly, the petition of the Committee should be granted to the extent of confirming the findings of fact and conclusions of law of the Hearing Panel, except that the recommended sanction of disbarment is disaffirmed and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of five years.

FRIEDMAN, J.P., ELLERIN, WILLIAMS, GONZALEZ and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, effective November 14, 2005, and until further order of this Court. Motion No. 2910 dismissed as moot.