[38 NYS3d 154]

In the Matter of DAWN M. HAZELHURST (Admitted as DAWN MARIE HAZELHURST), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 29, 2016

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Naomi F. Goldstein* of counsel), for petitioner.

*Dawn M. Hazelhurst*, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Dawn M. Hazelhurst was admitted to the practice of law in the State of New York by the First Judicial Department on February 6, 1984 as Dawn Marie Hazelhurst. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within this Department.

In March 2014, the Departmental Disciplinary Committee (the Committee) sought respondent's immediate suspension based upon alleged admissions made under oath that she had converted client funds and upon other uncontested evidence of professional misconduct (i.e., bank records) (Rules of App Div, 1st Dept [22 NYCRR] § 603.4 [e] [1] [ii], [iii]). Respondent cross-moved, asking this Court to deny the motion and, instead, order a prompt evidentiary hearing based upon formal charges. In May 2014, this Court denied the motion and granted the cross motion to the extent of directing the Committee to promptly proceed pursuant to our prior order of April 4, 2014, by which we appointed a Referee to conduct a hearing and file a report.

On April 9, 2014, the Committee served respondent with a notice and statement of four charges alleging that, between April and November 2007, she misappropriated and converted

to her own use guardianship funds in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]); by failing to keep bookkeeping records for the guardianship account she violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]); by abrogating her fiduciary duty as guardian she violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]); and by failing to maintain records for her escrow account from 1995 until at least October 2013 she violated DR 9-102 (d) (22 NYCRR 1200.46 [d]) and Rules of Professional Conduct (RPC) rule 1.15 (d) (22 NYCRR 1200.0).

On May 22, 2014, respondent formally answered and admitted, inter alia, that she misappropriated the guardianship funds at issue.

Before the scheduled hearing could commence on August 13, 2014, respondent was diagnosed with cancer and began a 20-week regime of weekly chemotherapy. In November 2014, respondent made an application to this Court seeking a postponement of the hearing until after her doctor's reassessment of her condition in February 2015. The Committee, concerned that respondent was still practicing law by servicing her current clients, filed a motion for respondent's immediate suspension, pursuant to 22 NYCRR 603.16 (c) (1), by reason of her physical or mental illness which rendered her unable to defend herself in the pending proceeding. Respondent opposed the motion. In May 2015, while the motion was sub judice, the Committee withdrew its suspension motion.

By a prehearing stipulation dated July 8, 2015, the parties agreed to amend the charges in certain immaterial ways and it set forth the undisputed facts upon which the hearing before the Referee proceeded, including that 17 checks were issued to respondent from a guardianship account and none of the checks were written on behalf of her client.

On the same day, a hearing commenced before the Referee at which respondent appeared pro se. In a July 15, 2015 one-page decision on liability, the Referee sustained all the charges; charge one: a violation of DR 1-102 (a) (4) (engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation); charge two: a violation of DR 1-102 (a) (7) (engaged in conduct that adversely reflects on her fitness as a lawyer); charge three: a violation of DR 1-102 (a) (7) (same); and charge four: a violation of DR 9-102 (d) and RPC rule 1.15 (d) (a lawyer shall maintain required bookkeeping records) and 22 NYCRR 603.2.

Thereafter, a hearing on sanction proceeded by written submissions. By a report dated November 18, 2015, the Referee

recommended, inter alia, that respondent be suspended from practice for two years, notwithstanding this Court's precedent of imposing disbarment for intentional conversion.

A Hearing Panel then heard oral argument on January 11, 2016, at which the Committee asked the Panel to disaffirm the Referee's sanction recommendation and, instead, impose disbarment; respondent requested the Panel recommend a suspension of no more than two years. In a report dated March 4, 2016, the Panel affirmed the Referee's findings and recommended a five-year suspension.

Now, by notice of petition, the Committee seeks an order pursuant to Judiciary Law § 90 (2) and 22 NYCRR 605.15 (e) (2) confirming the Hearing Panel's findings and imposing a sanction of no less than a five-year suspension. Respondent, pro se, supports the Committee's motion to confirm, including the imposition of a suspension of no less than five years.

The underlying undisputed facts are that in April 1999, respondent was appointed guardian of an incapacitated person (IP) who, throughout the guardianship, resided at a nursing home. Respondent filed annual reports for the guardianship for 1999 through 2001, which were approved by the court. On March 4, 2003, the IP died without heirs. Respondent did not file a final accounting until three years later, on March 21, 2006.

Between April 11 and November 27, 2007, four years after the IP's death, 17 checks totaling $36,668.41 were issued from the guardianship account to respondent, all purportedly signed by her. Thirteen of the 17 checks were deposited into respondent's business account. Three of the 17 checks were consecutively numbered and were deposited into a Commerce Bank account in New Jersey which respondent testified she knew nothing about, and she did not recognize the handwriting or the signature on at least two of the checks. Respondent stated that she had moved her office many times over the relevant time period, she shared a desk with a lawyer friend, and her office and desk were unlocked so "[a]nyone could have gone into my room."

Between April 11, 2007 and August 1, 2008, respondent issued 100 checks from her business account which were all written by her for her own benefit, to pay her law practice or personal expenses. None of the checks were written for the benefit of the IP and all of the money withdrawn was used by respondent for her personal benefit without authorization. For

at least January and February 2007, just before the above withdrawals began, respondent's business account had monthly balances that were in the negative.

Five years after the filing of the final accounting, in May 2011, the matter finally came before Supreme Court for judicial settlement, and the court appointed a Special Referee to hear and report on the final account. The Referee asked respondent for copies of monthly bank statements, canceled checks and receipts in support of her final account. Respondent had no such records for 2006, 2007 and 2008, but was able to produce copies of some of the guardianship bank statements for 2009, and 2010 through July 24, 2011.

It apparently was not respondent's practice to keep a formal ledger for any bank account she maintained, including guardianship accounts. She reconciled the accounts by using bank statements and check registers. Respondent attributed her inability to produce the records for 2006, 2007 and 2008 to the fact that she moved her offices a lot between 1994 and 2013, and there was a flood in the storage facility where she kept some boxes related to the IP.

The Referee calculated that the actual balance in the July 2011 bank statement reflected a deficit of $37,978.45. Respondent could not account for this discrepancy, nor an additional discrepancy of $6,350.15, which represented the amount respondent reported paying the nursing home where the IP had resided and the amount the facility stated it had actually received from respondent.

In his report dated December 22, 2011, the Referee recommended respondent be surcharged the sum of $44,328.60, which represented the total of the unexplained discrepancies in the guardianship account, and respondent did not file any objections. By order entered February 6, 2012, Supreme Court confirmed the Referee's report, settled the final account, and surcharged respondent $44,328.60 for the missing funds plus $4,430.58 for the Referee's services, to be paid by February 16, 2012.

On April 25, 2012, a hearing was held before Supreme Court at which respondent promised she would make payment in six months or her surety company would. When respondent was unsuccessful in obtaining a home equity line of credit, her surety company paid the $44,328.60 surcharge, which respondent has been repaying in installments ever since.

The record reflects that there were numerous illnesses and deaths amongst members of respondent's close family over the span of three years that included the relevant time period, which led to family conflicts and caused respondent to get off track and "overwhelmed" her.

Respondent's 31 years of practice has included two years as an attorney for New York City Administration for Children's Services, eight years as a law secretary for a Justice of the Supreme Court and 21 years in private practice, all without any blemish. Respondent has handled many estates as a guardian for incapacitated persons and every annual accounting was approved.

Since respondent's misappropriation and intentional conversion of guardianship funds is undisputed, the issue presented is whether a sanction less than disbarment is warranted. This Court has consistently maintained the position that "[a]bsent extremely unusual mitigating circumstances," an attorney who has intentionally converted client funds is presumptively unfit to practice law and should be disbarred (*Matter of Birnbaum*, 308 AD2d 180, 183 [1st Dept 2003] [internal quotation marks omitted] [unblemished 30-year career, full cooperation, absence of client injury, immediate repayment of stolen funds, not enough to overcome disbarment]; *Matter of Neufeld*, 268 AD2d 1, 3-4 [1st Dept 2000]; *Matter of Ampel*, 208 AD2d 57, 60 [1st Dept 1995]).

However, in the last 25 years, there have been at least three cases where this Court has imposed less than disbarment for intentional conversion: *Matter of Molinini-Rivera* (24 AD3d 36 [1st Dept 2005] [five-year suspension]); *Matter of Albanese* (274 AD2d 284, 286 [1st Dept 2000] [four-year suspension for isolated incident of conversion of a downpayment deposit and submission of dishonest and misleading affirmation to court concerning the deposit, where variety of mitigation included 34-year unblemished record, cooperation, restitution and complaint may have been filed with "malevolent intent"]); and *Matter of Munzer* (261 AD2d 87 [1st Dept 1999] [one-year suspension for isolated incident and attorney under great personal stress where the misappropriated client funds were used for repairs to apartment destroyed by fire and client/friend testified he would have loaned the money had he known the attorney needed it]).

The circumstances in this case are most similar to those in *Molinini-Rivera*, where the respondent deposited a $5,000

settlement check into her IOLA account in 2000, and preceded to make unauthorized withdrawals for her personal use over a two-month period. In response to the Committee's questioning, the respondent repaid the client some funds, withholding her legal fee and another amount she claimed she had paid for a doctor's lien when, in fact, she had not; on three separate occasions she testified falsely before the Committee that she had paid the lien. The respondent in that case was also found guilty of failing to maintain required bookkeeping records for her IOLA account and failing to satisfy a small claims judgment her client obtained against her regarding her retention of funds related to the claimed medical lien. With respect to a second matter, the respondent was found to have lied about having made an Immigration and Naturalization Service (INS) application for a client, acted deceitfully in submitting to a court an INS receipt that had been altered as evidence of the claimed filing, and neglected the immigration matter.

As to mitigation, Ms. Molinini-Rivera testified to physical and verbal abuse throughout her 16-year marriage that ended in 1995, and that her former employer, an attorney, harassed and stalked her, forcing her to quit in 1999. After her departure, former clients filed disciplinary complaints, apparently at the urging of her former colleague, which she had difficulty responding to because he denied her access to her computer and legal files. As a result, she began experiencing severe financial difficulties. The respondent also offered evidence from a psychologist who concluded that she suffered from multiple disorders and found a causal connection between these disorders and her professional misconduct.

In opting for suspension over disbarment, this Court found, inter alia, that the respondent's theft of funds over a two-month period was an "isolated occurrence" rather than a "systematic looting," that she expressed remorse and repaid the funds owed, and that "the long-term effects of her chronic mistreatment played a significant role in her actions" (*Matter of Molinini-Rivera*, 24 AD3d at 40).

While respondent in the case at bar converted more client funds, on more occasions over a seven-month period, her misconduct was isolated in its nature, and, is arguably less egregious than that in *Molinini-Rivera*, which involved more than one client matter, repeated false testimony before the Committee, and deceit before a court. As to respondent's lack of medical evidence in support of the "emotional storm that

clouded her judgment and led to the extremely aberrational—though serious—misconduct," and, therefore, the absence of a causal link with the misconduct, respondent explained that she did not seek professional help for her depression and feelings of being overwhelmed because she did not believe in such, and because she did not need a professional to explain why she could not get out of bed for days. Indeed, respondent testified to the stress of her own and her family's illnesses and then deaths during the relevant time period, coupled with being called a "heartless murderer" by her grandmother and others for making the painful decision to discontinue her mother's feeding tube. As the Hearing Panel further concluded, "there is no serious doubt that [respondent] was suffering from extreme emotional duress at this time."

Additionally, as the record supports and the Hearing Panel determined, this was an isolated incident on the part of a lawyer with an otherwise unblemished practice history spanning more than 30 years, and there is virtually no likelihood of a repetition of these actions. Respondent fully cooperated with the Committee throughout these proceedings, she is repaying the money taken, and has expressed sincere remorse for her misconduct (*compare Matter of Taylor*, 113 AD3d 56 [1st Dept 2013] [disbarred for conversion of guardianship funds, inadequate recordkeeping, cash withdrawals, prior admonition, failure to acknowledge misconduct, lack of remorse, failure to repay over $400,000 in surcharges]). Furthermore, as the Hearing Panel observed, "the uniqueness of the circumstances of this case will not establish a negative precedent for future instances of similar misconduct" and could even provide some "clarity" as to those limited circumstances where a departure is warranted from the usual rule of disbarment for intentional conversion of client funds.

Accordingly, we agree with the Hearing Panel and the Committee that "this is one of those rare cases where exceptional circumstances have been demonstrated" (*Molinini-Rivera*, 24 AD3d at 40). We thus grant the Committee's motion to confirm the findings of fact and conclusions of law of the Hearing Panel and respondent is suspended from the practice of law for a period of five years.

MAZZARELLI, J.P., SWEENY, ANDRIAS, MANZANET-DANIELS and KAPNICK, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, effective the date hereof, and until further order of this Court.