Matter of Castro (2020 NY Slip Op 04240)





Matter of Castro


2020 NY Slip Op 04240


Decided on July 23, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 23, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. Rosalyn H. Richter, Justice Presiding,
Ellen Gesmer
Jeffrey K. Oing
Anil C. Singh
Peter H. Moulton, Justices.


M-947

[*1]In the Matter of Claude Castro, a suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Claude Castro, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Claude Castro, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on February 18, 1976.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Yvette A. Rosario, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent Claude Castro was admitted to the practice of law in the State of New York by the Third Judicial Department on February 18, 1976. At all relevant times, respondent maintained an office for the practice of law within the First Judicial Department.
On October 31, 2017, this Court immediately suspended respondent from the practice of law based upon his failure to cooperate with the Attorney Grievance Committee (AGC) in its investigation of a complaint filed against him and uncontroverted evidence that he converted and/or misappropriated client funds (155 AD3d 102 [1st Dept 2017]).
In 2018 and 2019, the AGC served respondent with charges alleging, inter alia, that he converted and/or misappropriated client funds, failed to cooperate with the AGC's investigation, and engaged in the unauthorized practice of law while under interim suspension in violation of the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15(a), 1.15(b), 5.5(a), 8.4(c), 8.4(d), and 8.4(h).
Respondent submitted answers in which he denied most of the material facts alleged by the AGC, denied the charges, and asserted affirmative defenses.
In October 2019, a referee held a liability hearing during which the AGC called three witnesses, including respondent, and introduced documentary evidence. Respondent called two witnesses and introduced documentary evidence.
The liability hearing elicited the following facts. Between March and June 2010, respondent deposited $93,040 into his IOLA account which funds were to be held on behalf of his client in connection with a landlord/tenant dispute. Between April and June 2010, respondent disbursed $34,890 to the client's landlord in accordance with the court's orders. The remaining balance of $58,150 should have remained intact until payment was made to the client. However, respondent's bank records show that, between August 2010 and October 2013, the IOLA account balance repeatedly fell below $58,150, and, as of July 2012, had fallen to $562.27. Finally, in December 2014, respondent paid his client the $58,150 he was owed after the client complained to the AGC.
Between June 2016 and April 2017, after the AGC had obtained respondent's account records from his bank, the AGC requested he complete an Excel spreadsheet, in a format prepared by the AGC's investigative accountant, by identifying the client matter for each account transaction during the period at issue, as well as provide his IOLA account ledger. Despite being granted eight extensions, respondent failed to produce the requested information which, in part, formed the basis for his interim suspension.
Respondent testified that he held onto the client's money because there were no ongoing rent proceedings with the landlord, the litigation had been abandoned, and he had no idea what his client was doing. Moreover, in or about September 2014, the client and his new counsel demanded that respondent return the entire $93,040 and threatened him with a grievance and legal malpractice action if he did not do so, and respondent claimed that this demand caused him to delay disbursing the funds.
Respondent conceded that he failed to hold the client's funds intact continuously, but asserted that his failure was nonvenal because he was not equipped to both litigate and manage his law firm, he accepted the client's monies without an escrow agreement and did not track the funds correctly, and his secretary, whom he depended on to run his office but who did not have control over his IOLA account, went on disability for a year and was purportedly going senile. His secretary's condition was corroborated by another witness.
As to his noncooperation, respondent claimed that he started to work on the Excel spreadsheet but ceased doing so once the AGC brought proceedings against him. He also claimed to have a ledger for his IOLA account and was prepared to provide it to the AGC but he never did.
The AGC charged respondent with violating the terms of his October 2017 interim suspension [FN1] by providing assistance on a Supreme Court, New York County case entitled Ostad v Nehmadi, et al. Attorney Evan Klestzick had taken over the case after respondent was suspended, when the case was already on the trial calendar. Klestzick testified before the Referee that respondent did not receive any compensation from the case, never held himself out as an attorney but assisted Klestzick, at his request, to understand all the facts and issues of the complicated case and to locate some evidence. Klestzick stated that respondent analyzed the Ostad trial transcript and emailed him a memorandum which contained trial strategies. Klestzick further testified that respondent met with him and the client during the March 2019 trial, and assisted him on drafting his motion to vacate.
The Referee held a sanction hearing at which respondent testified on his own behalf and called three character witnesses who testified as to, inter alia, his dedication to his clients and charitable causes, and his handling of millions of dollars in escrow funds without incident.
Respondent testified that in 2009 he started his own law firm but was not equipped to handle both the demands of his practice and management of the firm, and poor record keeping caused him to lose track of his client's funds. As to his alleged unauthorized practice of law while suspended, he did not feel it would have been right to refuse to assist Klestzick in the Ostad case. Respondent also expressed remorse.
In a post-hearing memorandum the AGC argued for respondent's disbarment, and respondent urged a public censure or a term of suspension.
The Referee issued his report in which he sustained 8 out of the 10 charges alleged against respondent. The Referee found that respondent misappropriated client funds in violation of rules 1.15(a) (prohibiting misappropriation) and 1.15(b) (failure to maintain client funds in a special account) and therefore sustained charges 2 and 3. However, the Referee did not sustain charge 1, which alleged intentional conversion in violation of rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), since he concluded that respondent did not act with venal intent when he misappropriated the client's funds, but rather attributed it to poor management of his firm.
The Referee also did not sustain charge 5, which alleged that respondent failed to promptly remit funds in his possession that the client was entitled to receive in violation of rules 1.15(c)(4) and 8.4(h) because "[i]t appear[ed] that [the client] and his attorney wanted the full amount of [$]93,[0]40" and, thus, "[t]here [was] a suggestion of impropriety in this regard ...."
In sustaining charge 6, the Referee found that, with respect to his 2010 and 2012 attorney registration statements, respondent falsely affirmed that he was in compliance with the escrow requirements of rule 1.15 in violation of rule 8.4(c). The Referee also found that, by failing to produce required bookkeeping records as requested and by failing to complete the Excel spreadsheet by identifying the client transactions in his IOLA account during the period at issue, respondent violated rules 1.15(i) (requiring bookkeeping records be made available to disciplinary authorities), 1.15(j) (failure to maintain or produce required bookkeeping records basis for disciplinary action), and 8.4(d) (conduct prejudicial to the administration of justice). Accordingly, he sustained charges 4 and 7.
Additionally, the Referee found that by summarizing witness testimony and providing trial strategies to Klestzick in the Ostad case, while under interim suspension, respondent engaged in the unauthorized practice of law in violation of rules 5.5(a) (prohibiting the [*2]unauthorized practice of law), 8.4(d), and 8.4(h) (other conduct adversely reflecting on fitness as a lawyer). Accordingly, he sustained charges 8-10.
On the issue of sanction, the Referee found there was mitigation in that respondent expressed remorse for his misconduct, he had a previously unblemished 40-year legal career during which he was dedicated to his clients, and he engaged in pro bono and charitable work. In aggravation, the Referee cited respondent's failure to cooperate with the AGC and opined that it would have been better if he had advised the AGC that the requested records did not exist if that were the case.
As to respondent's unauthorized practice of law in violation of his interim suspension, the Referee acknowledged precedent showing that disbarment is the usual sanction for such misconduct (see e.g. Matter of Gonchar, 166 AD3d 91 [1st Dept 2018], lv denied, 32 NY3d 914 [2019]; Matter of Rosabianca, 131 AD3d 215 [1st Dept 2015]; Matter of Streit, 89 AD3d 190 [1st Dept 2011]; Matter of Veski, 42 AD3d 122 [1st Dept 2007]).
However, the Referee found respondent's misconduct was distinguishable from those cases in that he did not appear in court or at a closing, he did not fail to advise clients of his suspension, and he did not hold himself out as an attorney in good standing. Rather, he "sought to assist incoming counsel on a serious claim only when Klestzick asked and demonstrated he was not prepared" which "balancing factors need to be also taken into account."
As to respondent's nonvenal misappropriation of his client's funds, the Referee cited to intentional conversion cases in which this Court departed from the usual sanction of disbarment due to extremely unusual mitigation (see Matter of Hazelhurst, 144 AD3d 31 [1st Dept 2016]; Matter of Molinini-Rivera, 24 AD3d 36 [1st Dept 2005]; Matter of Albanese, 274 AD2d 284, 286 [1st Dept 2000]).
The Referee ultimately concluded:
"This referee feels that his recommendation of a sanction calls for a balancing of the various issues presented. The mitigation witnesses show that [respondent] is a zealous advocate with personal qualities to be admired in a practitioner. However, this aspect needs to be weighed against his mismanagement of his practice leading to a shortfall in his escrow account. The referee does not feel that disbarment is a warranted sanction. This Referee feels that his recommendation of a sanction is more in line with the Matter of Albanese 274 AD2d 284 (1st Dept 2000). In that case, the respondent was suspended from the practice of law for a period of four years. The court noted that its leniency of a 4-year suspension was prompted by the attorney's previously unblemished record and the isolated nature of the incident. See also Matter of Hazelhurst 144 AD3d 31(1st Dept 2016) and Matter of Molinini-Rivera 24 AD3d at 40. The referee recommends a sanction of a 4-year suspension." The AGC asks this Court to confirm the Referee's liability findings in full and, as to sanction, suspend respondent for no less than four years, or, in the alternative, sanction him as this Court deems appropriate under the circumstances. The AGC relies on its post-hearing memorandum submitted to the Referee in which the AGC argued for disbarment.
Respondent, pro se, joins in the AGC's request that the Referee's liability findings be affirmed in full. He argues that the Referee's liability findings, including his finding that there was no intentional conversion, are fully supported by the record as well as credibility determinations that are entitled to deference.
Respondent avers that he is embarrassed and remorseful for his failure to cooperate with the AGC and he concedes that he should have advised the AGC that the requested bookkeeping records were not available due to his negligence.
As to his unauthorized practice of law, he cites the following as mitigation: the testimony of his witnesses that he is a zealous advocate; he was deeply disappointed in himself for being suspended, thus causing his clients to have to retain new counsel in complicated matters; as a result, he felt an ethical and moral responsibility to them; his former ethics counsel advised him that he was obligated to speak with incoming counsel to explain the status of the cases; and Klestzick contacted respondent on the eve of the Ostad trial, and respondent denies having gotten [*3]involved in any aspect of the case except to provide information and documents which he had previously given. Accordingly, he argues that the Referee correctly distinguished his actions from those of suspended attorneys disbarred for violating the terms of their suspensions.
As to sanction, respondent requests that this Court consider imposing a three-year suspension retroactive to the date of his interim suspension, October 31, 2017, based on his entire record.
The Referee's liability findings should be affirmed in full as they are firmly supported by the record, and the Referee's sanction recommendation of a four-year suspension should also be affirmed. Respondent's nonvenal misappropriation of client funds together with his failure to cooperate with the AGC support a significant suspension (see Matter of Racer, 56 AD3d 125 [1st Dept 2008]; Matter of Levy, 307 AD2d 47 [1st Dept 2003]; Matter of Tepper, 286 AD2d 79 [1st Dept 2001]).
Accordingly, the motion is granted to confirm the Referee's findings of fact and conclusions of law, and confirm the Referee's recommendation of a four-year suspension, retroactive to the date of his interim suspension, October 31, 2017.
All concur.
Order filed. [July 23, 2020]
The Committee's motion to confirm the Referee's findings of fact, conclusions of law and sanction recommendation is granted, and respondent is suspended from the practice of law in the State of New York for a period of four-years, effective October 31, 2017, the date of his interim suspension, and until further order of this Court.



Footnotes

Footnote 1: Our October 31, 2017 suspension order directed respondent "to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another" and he was "forbidden to give another an opinion as to the law or its application or advice in relation thereto."